922 A.2d 598

Quinnel MARTIN

v.

STATE of Maryland.

No. 2146, Sept. Term, 2005.

Court of Special Appeals of Maryland.

May 3, 2007.

512

Vandana Koelsch (Joseph Walker, on brief), Washington, DC, for appellant.

Michelle W. Cole (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Panel DAVIS, EYLER, JAMES R., ADKINS, and JJ.

DAVIS, J.

Appellant, Quinnel Martin, was tried and convicted by a jury in the Circuit Court for Montgomery County (Dugan, J.) of robbery. On November 17, 2005, the court sentenced appellant to eight years imprisonment, suspending all but eighteen months, accompanied with three years of supervised probation. Appellant noted a timely appeal, presenting the following questions for our review: [1]

1. Was the evidence legally sufficient to sustain a conviction for robbery where the prosecution failed to show that appellant used threat of force to obtain property?

2. Did the trial court err when it refused to clarify and supplement a jury instruction upon a critical issue?

3. Did the trial court err in its jury instructions that excluded a defense at issue?

4. Did the trial court err when it substituted an erroneous statement of the law in the jury instructions?

## FACTUAL BACKGROUND

During the course of the trial, the alleged victim, Eric Turner, testified that, on May 1, 2005, he left his home at 422 Ritchie Parkway, Rockville, Maryland, to walk his pit bull dog. Pausing to speak to one of his neighbors, Alfred Smith, Turner stated that appellant jumped out from behind a parked car wielding a baseball bat. Appellant accused Turner of

---

1. Questions three and four appear in opposite order in appellant's brief. We have reversed the order according to how each question has been addressed in this opinion.

stealing $150 from him in a botched drug buy and demanded that his money be returned. Turner informed appellant and Smith that they had the wrong person. Appellant told Turner that he would strike him with the bat if he did not give him the money. This exchange continued for approximately ten minutes until Turner eventually relented, surrendering all of the approximately $100 he had in his pocket.

Turner testified that appellant, not satisfied with the amount taken, demanded to be paid the balance of the alleged $150 debt. Turner thereupon told appellant that he had more money at his house that he could give him. Accompanied by appellant and Smith, Turner returned to his home, where he instructed his wife, Gail Turner, to "[s]end me down some money! Send me down some money!" According to Turner, while he waited for his wife to have his son bring the money to him, appellant stood in the front yard of the home and Smith stood on the porch with him.

Gail Turner testified that she was bringing dishes in from their barbecue dinner when her husband yelled to her that he needed the money. She was not made aware of the serious-ness of the situation until her husband indicated that there were two men with him, one with a bat and the other with a knife. At her husband's direction, she called 911 and told them that two men were trying to beat up her husband.[2] Appellant and Smith left the residence after receiving the additional $50.

Appellant's version of the events differed sharply from that of Turner. He testified that Turner had stolen $150 from him in a sham drug transaction. He attempted unsuccessfully to recover the money from Turner. Consequently, appellant and Smith walked to Turner's house to retrieve the money. En route, they saw Turner walking his dog in the neighborhood. Frightened by the dog, appellant broke off a branch from a nearby tree to protect himself from the dog. He stated that he requested that Turner return the "stolen money." Appel-

---

2. The 911 tape was played for the jury and made a part of the record.

lant testified that he stated, "If you don't give me my money, I'm going to hit you with this stick." [3] Turner gave appellant approximately $100 and all three men returned to Turner's home, where Turner gave appellant an additional $50.

Appellant's counsel had contemplated raising as a defense to the charges that appellant lacked the intent to steal from Turner because he was recovering his own money, *i.e.*, the claim of right defense. Appellant's counsel proposed jury instructions to support this claim, which were summarily rejected by the court.

During deliberations, the jury sent several notes to the court. One note asked, "Does it matter whether the victim felt threatened for there to be a threat of force?" The court declined to answer the question, instead instructing the jury to rely on the instructions previously given.

## LEGAL ANALYSIS

### I

### SUFFICIENCY OF EVIDENCE

Appellant contends that the State failed to satisfy the burden of proof necessary to establish a robbery conviction. Specifically, appellant contends that the State failed to prove beyond a reasonable doubt that he intended to intimidate or intimidated Turner, which is a prerequisite of a robbery conviction. In his brief, appellant attempts to rationalize the jury verdict and any implications arising therefrom by commenting on what testimony the jury found more credible. We disagree and explain.

 "Generally, if there are evidentiary facts sufficiently supporting the inference made by the trial court, the appellate court defers to the fact-finder instead of examining the record

---

**3.** Appellant's testimony differs from that of Turner in that appellant testified to using a stick instead of a bat. We note that an aluminum bat matching the description given to police by Turner was recovered in Smith's car.

for additional facts upon which a conflicting inference could have been made, and then conducting its own weighing of the conflicting inferences to resolve independently any conflicts it perceives to exist. The resolving of the conflicting evidentiary inferences is for the fact-finder." *State v. Smith,* 374 Md. 527, 547–48, 823 A.2d 664 (2003). We must observe three important principles in our analysis:

> (1) we must give great deference to the trier of facts' opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence, (2) circumstantial evidence alone can provide a sufficient basis upon which a trier of fact can rest its determination of guilt, even for first degree murder, and (3) we do not re-weigh the evidence or substitute our own judgment, but only determine whether the verdict was supported by sufficient evidence to convince the trier of fact of the defendant's guilt beyond a reasonable doubt.

*Pinkney v. State,* 151 Md.App. 311, 329, 827 A.2d 124 (2003).

■ Robbery has been defined "as the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear . . . or, more succinctly, as larceny from the person, accompanied by violence or putting in fear. . . ." *West v. State,* 312 Md. 197, 202, 539 A.2d 231 (1988) (internal citations omitted). The "putting in fear" aspect of that definition is of particular relevance to the instant case. The Court of Appeals explained the requisite level of fear in *Coles v. State,* 374 Md. 114, 821 A.2d 389 (2003).

In *Coles,* the Court was tasked with determining if there was sufficient evidence to affirm a robbery conviction of an appellant accused of robbing the same bank three different times. Specifically, the appellant claimed that his handing of notes to bank tellers demanding money did not engender sufficient fear to convict him of robbery. In neither of the incidents did the appellant brandish a weapon to coerce compliance. In its analysis, the Court considered whether to employ a subjective standard to determine fear, "i.e. from the

viewpoint of the teller regarding his or her fear," or an objective standard, "*i.e.* from the circumstances of the robbery." *Coles,* 374 Md. at 126–27, 821 A.2d 389. Adopting the objective standard, the Court utilized the following test to determine intimidation or putting in fear enunciated in *Dixon v. State,* 302 Md. 447, 458–59, 488 A.2d 962 (1985) (quoting *Lyles v. State,* 10 Md.App. 265, 267, 269 A.2d 178 (1970)):[4]

> [A]ny attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention.

In the case *sub judice,* appellant admitted to possessing an object—whether a bat or, as he claims, a tree branch—when he accosted Turner. He also admitted that he threatened to hit Turner with the object if he did not produce the money:

> [Defense Counsel]: And so tell me what you did—tell the jury what you did upon seeing [Turner].
>
> [Appellant]: When I seen him, I seen he had his dog. You see what I'm saying? I broke a stick off the tree. It was like a thick piece of stick, thick piece of wood, see what I'm saying? I broke it off the tree and then I started walking towards him.
>
> And my cousin [Smith] was standing there—you know what I'm saying—and they was talking. And then I walked up and was like, "Yeah, where's my money?" And then, he was just like—
>
> [Appellant's Counsel]: Okay. Did—in your recollection, how close did you ever come to Eric?

---

**4.** In the Court's adoption of the objective standard, it aligned itself with the majority of federal circuits that had addressed similar situations interpreting the federal bank robbery statute. *Coles,* 374 Md. at 131, 821 A.2d 389.

[Appellant]: I'd say like two, three feet away from him like all the time. Two, three feet away from him.

\* \* \*

[Appellant's Counsel]: Okay. At any time during this interaction, did you tell Eric Turner that you were going to beat him up?

[Appellant]: No. I told him once, because he kept saying like, you know what I'm saying, he kept telling my cousin that he wasn't going to give me nothing. And then, you know what I'm saying, he did what he did and he's not going to give me nothing. So I was like, "If you don't give me my money, I'm going to hit you with this stick."

The testimony is clearly consistent with the facts of *Coles*, where the threat of force was not accompanied with a weapon, as was the case here. In the instant case, context is given to the incident in light of Turner's testimony, "[w]ell, I felt scared. I thought, you know, I just, I felt scared. I thought, you know, I was going to die right there."

■ It is appellant's position that the jury rejected Turner's testimony and "only the [a]ppellant's testimony informed the jury what had transpired between the three men." We need not address this claim because, "In performing this fact-finding role, the jury has authority to decide which evidence to accept and which to reject. In this regard, it may believe part of a particular witness's testimony but disbelieve other parts of that witness's testimony." *Bayne v. State*, 98 Md.App. 149, 155, 632 A.2d 476 (1993) (citations omitted). The record in this case demonstrates that the applicable objective standard of fear has been satisfied because appellant's actions could reasonably tend to have placed Turner in apprehension. Accordingly, there was sufficient evidence to convince the jury of appellant's guilt beyond a reasonable doubt.

## II

## JURY QUESTION

Appellant contends that the trial court erred by failing to answer the jury's question: "Does it matter whether the

victim felt threatened for there to be a threat of force?" After receiving the note, the court summonsed the parties and proposed that its response should be to rely on the instructions already promulgated. Ultimately, the court's response was: "You must rely on my instructions." The State filed a motion to reconsider its jury response. Appellant's counsel did not object to the instruction, as demonstrated by the following exchange:

[The Court]: Oh, wonderful. All right, well, I guess we're going to wait until we—What are you doing? I could see that coming a mile away. Who are you looking at, huh? Well, we are going to have to wait until we get the jurors, but [appellant's counsel], I see here that you have filed a motion for reconsideration. This is the first time I've ever seen a motion for reconsideration of a note from the jury. But I've looked at your motion. Are you in agreement with this Motion, counsel?

[Appellant's Counsel]: No.

[The Court]: I thought you might not be. All right. While you very well may be right, the fact of the matter is that I think that my instructions fairly reflect the state of the law. There's no mention about a fear in the instructions. It sets out exactly what the State has to prove beyond a reasonable doubt. And so, I'm not going to re-answer the note. If they send out another note, we'll consider any change that applies to this at that time. But the instructions, I think, appropriately covered what the law is. My recollection is that your victim [Turner] testified, on a couple of occasions, that he was afraid in any event. So, I'm not sure what they're a note-writing group; I will say that. I'm not—I was a little surprised to find that they needed a legal, they wanted a legal definition of threat of force. So, we may not have heard or seen our last note from them.

Maryland Rule 4–325(e), which sets forth the rules regarding objections to jury instructions, provides:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record

promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

■ Pursuant to this rule, we have consistently held that a party waives his/her rights when he/she fails to request an instruction or object to an instruction. *See, e.g., Cicoria v. State,* 89 Md.App. 403, 426, 598 A.2d 771 (1991) (failure to request a good faith defense instruction constitutes waiver of that issue); *Sine v. State,* 40 Md.App. 628, 394 A.2d 1206 (1978) (In criminal proceedings, failure to object to a particular instruction constitutes a waiver of that issue on appeal); *Squire v. State,* 32 Md.App. 307, 360 A.2d 443 (1976), *rev'd on other grounds,* 280 Md. 132, 368 A.2d 1019 (1977) (Constitutional rights may be waived at trial, which may preclude consideration of an allegedly erroneous instruction).

■ It is apparent from the record that appellant did not object to the instruction given, nor did he request that an amended instruction be given when the note was sent to the court. The State objected; however, appellant must object himself to preserve the issue for appellate review. *See, e.g., Hensen v. State,* 133 Md.App. 156, 165, 754 A.2d 1055 (2000) (noting that the trial court's denial of a motion for mistrial was not properly before the court because the appellant neither moved for mistrial nor joined in the codefendant's motion); *Ezenwa v. State,* 82 Md.App. 489, 506, 572 A.2d 1101 (1990) (failing to entertain an issue regarding testimony that was objected to by codefendant, but not by the appellant); *Cooley v. State,* 385 Md. 165, 181 n. 7, 867 A.2d 1065 (2005) ("There is support for the proposition that a defendant who chooses not to join a codefendant's motion cannot himself later appeal on such procedural grounds.") Accordingly, appellant is precluded from raising this issue.

 

## III

## CLAIM OF RIGHT DEFENSE

Appellant posits that the trial court erred by refusing to give the requested instruction as to his claim of right defense. He also contends that the court errantly appended an incorrect statement of law to the pattern jury instruction for robbery. We reproduce the disputed instruction below:

Robbery. The [appellant] is charged with the crime of robbery. Robbery is the taking and carrying away of property from someone's presence and control by force or threat of force with the intent to deprive the victim of the property. In order to convict the [appellant] of robbery, the State must prove that the [appellant] took the property from the victim's presence and control. It is essential only that the victim have possession, without regard to whether he has title, and even though that possession resulted from stealing the property.

Appellant argues that the claim of right defense has not been abrogated in Maryland and, accordingly, his request to propound a jury instruction should have been granted and that the instruction regarding possession versus title to the property misled the jury.

 Maryland Rule 4–325(c) provides, in pertinent part: "The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.... The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." In our analysis, we " 'must determine whether the requested instruction constitutes a correct statement of the law: whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions given.' " *Stevenson v. State*, 163 Md.App. 691, 694, 882 A.2d 323 (2005) (quoting *Ellison v. State*, 104 Md.App. 655, 660, 657 A.2d 402 (1995)). In general, a party is entitled to have his theory of the case presented to the jury through a requested instruction provided that theory is a correct exposition of the law and it is

supported by the evidence. *Johnson v. State,* 303 Md. 487, 512, 495 A.2d 1 (1985).

Appellant relies heavily on *Jupiter v. State,* 328 Md. 635, 616 A.2d 412 (1992), in support of his contention that he was entitled to assert visibly inebriated, walked into a restaurant and attempted to purchase a six-pack of beer. *Id.* at 636, 616 A.2d 412. The proprietor of the restaurant refused to sell the alcohol to the appellant and informed him that he would not consummate the sale because of the appellant's visible inebriation. *Id.* Not satisfied, the appellant went out to his truck and retrieved his shotgun. *Id.* He came back into the restaurant, pointed the gun at the owner and said: "Are you going to sell it to me now?" *Id.* The owner complied and the appellant paid for the six-pack. *Id.* Arguing that his actions did not constitute robbery, the appellant relied on *The Fisherman's Case,*[5] decided in sixteenth-century England, and on scattered commentary about the case. *Id.* at 637, 616 A.2d 412.

Regarding the claim of right defense, the *Jupiter* Court explained:

> Robbery is a common law crime in Maryland. *West,* 312 Md. at 202, 539 A.2d at 233. For that reason we shall apply common law claim of right principles in our discussion below, as opposed to the statutory version of claim of right in the consolidated theft statute, Md.Code (1957, 1992 Repl. Vol.), Art. 27, § 343(c).

> Jupiter, arguing within the reported facts of The Fisherman's Case, contends that those who force merchants of goods to sell their goods do not commit robbery because the merchants have been forced only to do what the merchants held themselves out as willing to do. The argument appears to be that Jupiter did not have the *mens rea* for robbery because he had a good faith claim of right to acquire the goods by paying for them; *i.e.,* he relied upon

---

5. 2 E. East. Pleas of the Crown 661–62 (1806); 1 W. Hawkins, Pleas of the Crown, 98 (4th ed. 1762).

the "supposed consent" of the seller to yield the goods upon tender of the full price. See Model Penal Code § 223.1 commentary at 157 (1980).

The Court of Appeals, providing a sketch of the factual backdrop in the *Fisherman's Case,* recounted, *id.* at 637, 616 A.2d 412:

> The accused met a fisherman who was going to market with some fish to sell. The fisherman refused to sell fish to the defendant, whereupon the other took away some of the Fisherman's Fishes against his will, and gave him more Mony [sic] for them than they were worth; but the Fisherman was thereby put in fear: Whereupon the other was indicted. . . . But Judgment was respited, for that the Court doubted whether it were Felony or no.

The appellant contended that the case held that, in order to be guilty of robbery or larceny as a matter of law, one must possess the requisite *mens rea.* *Id.* at 639, 616 A.2d 412. Accordingly, he argued that he was not guilty of robbery, because he never intended to rob the restaurant, but only to acquire what the seller ostensibly held out for sale. *Id.* Commenting that it was reasonable for the appellant to have known that it was illegal for the restaurant to sell alcohol to a visibly intoxicated person, the Court affirmed the robbery conviction. *Id.* at 647, 616 A.2d 412.

Appellant is correct that the *Jupiter* Court declined to list examples of when the claim of right defense would be inapplicable to the crime of robbery and to abrogate the defense completely. *Id.* at 646, 616 A.2d 412. However, appellant fails to note, in its comment, the Court's reluctance to endorse the defense: "Nonetheless, the public policy underlying these decisions is sound. In a complex and crowded world, legal process is necessarily the preferred alternative." [6] *Id.*

---

6. Several cases from a number of jurisdictions abrogate altogether or limit the claim of right defense. *Jupiter,* 328 Md. at 645, 616 A.2d 412.

Moreover, appellant overlooks that portion of the opinion, which proves fatal to his argument. The ultimate holding in *Jupiter*, regarding the claim of right defense is:

> We need not undertake to describe specific instances in which the claim of right defense should not apply to robbery, and we decline the State's invitation to abrogate the defense altogether. It is sufficient for the purposes of this case to hold that *the defense is not applicable to robbery when the transaction that the robbery effects would be illegal even if it were consensual.*

*Id.* at 646, 616 A.2d 412 (emphasis added).

Appellant testified that his underlying reason for retrieving money from Turner was for a drug transaction gone wrong:

> [Appellant's Counsel]: Because [Turner] was going to get what for you?

> [Appellant]: He was going to get some weed for me. [Appellant's Counsel]: Weed. You mean marijuana? [Appellant]: Yeah, marijuana.

> [Appellant's Counsel]: Okay. And so you spoke to him on the phone—

> [Appellant]: Yeah.

> [Appellant's Counsel]:—at that point and arranged to meet with him?

> [Appellant]: Yeah.

> [Appellant's Counsel]: And what happened when you went to the meeting spot?

> [Appellant]: When I went there, you know what I'm saying, he was talking, like, you know what I'm saying, like, it was all good, like, you know what I'm saying, he had it for me. And he was like, "Just give me the money first." So I pulled out my money. I count 150, and I gave it to him. As soon as I, like, reached my hand in the window to give it to him, he just pulled off. Like, he snatched it from me and just hit on the gas and pulled off.

Regardless of any testimony to the contrary,[7] if we were to find merit in appellant's contentions and overturn his conviction, the decision would have the practical effect of condoning an otherwise illicit activity.[8] We are not at liberty to do so. *See, e.g., Cates v. State,* 21 Md.App. 363, 370, 320 A.2d 75 (1974)("It is an ancient rule of law that parties to an illegal transaction can obtain no relief in the courts.") The trial court did not err by denying appellant's request for a claim of right jury instruction.

## IV

## JURY INSTRUCTION

■■■ Appellant objected and properly preserved the issue of whether the jury instruction given regarding robbery was not a proper statement of the law in light of the circumstances. The final portion of the instruction advised that, "[i]t is essential only that the victim have possession, without regard to whether he has title, and even though that possession resulted from stealing the property." He argues that this "misled the jury into believing that [Turner's] theft was immaterial and to ascribe it no weight whatsoever." We disagree and explain.

In *Cates,* 21 Md.App. at 368–69, 320 A.2d 75, the Court of Appeals stated:

> While the capacity of the victim is immaterial, it is essential that he have possession or custody, for by definition, goods cannot be taken from "the person of another or in his presence" unless he has possession or custody of the goods. Since only the prior possession of the victim is required, *the defendant may be guilty of robbery even though the victim had himself stolen the property from another person or the*

---

7. Turner contended that he never saw appellant prior to the alleged robbery.

8. Md.Code Ann., Criminal Law § 5–601: Possession of a Controlled Dangerous Substance.

*money stolen was the proceeds from the sale of property which had been stolen.*

(Emphasis added).

Thus, the disputed portion of the instruction is a correct statement of the law, is applicable based on the facts of the instant case and was not covered by other instructions. This instruction clearly comports with the Maryland Pattern Jury Instructions and Maryland Rule 4–325(c). In fact, the disputed portion of the instruction is virtually a direct quote from *Cates. See Cates,* 21 Md.App. at 368, 320 A.2d 75. Accordingly, the trial court did not err by including the aforementioned sentence in its given jury instruction.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**