979 A.2d 184

**Karlos WILLIAMS**

v.

**STATE of Maryland.**

**No. 2645, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Aug. 27, 2009.

Brian L. Zavin (Nancy S. Forster, Public Defender, on brief), for Appellant.

Edward J. Kelley (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: DAVIS, WOODWARD, RAYMOND G., THIEME JR. (Retired, Specially Assigned), JJ.

THIEME, J.

In 2002, appellant, Karlos Williams ("Williams"), was convicted, after a jury trial in the Circuit Court for Baltimore County, of two counts of first degree assault, one count of first degree burglary, and related charges. The court imposed a total sentence of 35 years. In 2007, Williams filed a Motion to Correct Illegal Sentences ("Motion to Correct"). From the denial of his Motion to Correct, Williams presents two questions for our review:

I. Did the trial court err by imposing sentences for first degree assault that exceeded the sentences that the court could have imposed for robbery, which was *nolle prossed* by the State,[1] and robbery with a dangerous and deadly weapon, of which Williams was acquitted?

II. Did the trial court err by imposing upon Williams separate sentences for burglary and assault?

For the reasons that follow, we shall vacate Williams's sentence of 25 years for first degree assault of Rochelle Ambrose ("Ambrose"), and remand with instructions that he be re-sentenced on that count to no more than twenty years. In all other respects, we shall affirm the judgment of the circuit court.

---

1. Rule 4–247(a) states: "The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a *nolle prosequi* on the record in open court." (Italics added.)

## Facts and Proceedings

On August 18, 2001, Ambrose was inside her home, "sitting on [her] bed [and] talking on [her] phone[.]" The door to Ambrose's home "was unlocked[,] because [her] son [David B. ('David'), who was eight years old] was playing" outside. After Ambrose heard someone running up her stairs, Williams and another man entered her room and put "guns in [her] face." Williams "told [Ambrose] to drop the phone" and asked: "Where is the stuff?" After Ambrose told Williams: "I don't know what you're talking about[,]" Williams ordered the other man to "go outside and get [Ambrose's] son[.]"

After the other man brought David to Ambrose's room, Williams and the other man pointed their guns at Ambrose and David. Williams asked: "Where is it?" Ambrose again stated: "I don't know what you're talking about[.]" After Ambrose began to cry, Williams told her to "shut up[,]" and hit her in the side of her head with the handle of his gun. On Williams's order, the other man taped Ambrose and David's mouths, hands, and feet with duct tape.

As the other man went downstairs and through Ambrose's things, Williams, pointing his gun at Ambrose and David, went through the things in her room. About ten to fifteen minutes later, the man downstairs "hollered" to Williams: "Come on, let's go." Removing Ambrose's driver's license and Social Security card from her purse, Williams told Ambrose: "If I hear anything about you calling the police, I'm going to kill your son[.]" Taking a fan from Ambrose's room, Williams and the other man exited her home through a sliding door.

"[F]umbling with [her] hands until [she] was able to break out" of the duct tape, Ambrose untaped herself and David. After waiting three days because she "was scared that something was going to happen[,]" Ambrose called police.

Williams was subsequently charged with robbery with a dangerous and deadly weapon, simple robbery, first degree assault of David, first degree assault of Ambrose, burglary, theft, and handgun offenses. At Williams's trial, the State,

prior to jury deliberations, dismissed the charge of simple robbery.

After deliberating, the jury convicted Williams of first degree assault of David, first degree assault of Ambrose, and first degree burglary. The jury acquitted Williams of robbery with a dangerous and deadly weapon and two handgun offenses. At sentencing, the court imposed a sentence of 25 years for first degree assault of David, a concurrent sentence of 25 years for first degree assault of Ambrose, and a consecutive sentence of ten years for first degree burglary.

On October 22, 2007, Williams filed the Motion to Correct. He contended that his sentences for first degree assault were illegal because they "exact[ed] a more severe and unanticipated penalty than that which could have been imposed if the prosecution ... had been successful in proving robbery." Because "the [']flagship crime['] governing the sentence to be imposed ... was [simple] robbery[,]" Williams claimed, "the maximum possible sentence that could be imposed [for] Williams' [s] conviction[s] of assault was ... ten years[.]" Williams further asserted that because "the elements of the assaults are included in the burglary[,]" his sentence for burglary was required to merge with his sentences for assault.

On December 10, 2007, the court denied the Motion to Correct.

## I.

■ Williams contends that the court erred in imposing a sentence of 25 years for each count of first degree assault, because the sentence "placed [Williams] in a worse position than if he had been convicted of either of the greater offenses" of simple robbery or robbery with a dangerous or deadly weapon. "Had the jury ... convicted ... Williams of robbery with a dangerous [or deadly] weapon," he claims, "the ... court could have sentenced him to up to [twenty] years for the offense[,]² but could not have imposed separate sentences for

---

2. Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, Section 487(b), *recodified as* Md.Code (2002), Section 3–403(b) of the Criminal Law

the assaults of . . . Ambrose and her son, the latter offenses being incidental to, and included within, the former." "[H]ad the jury convicted . . . Williams only of simple robbery," he asserts, "the maximum sentence [that he] could have received was [fifteen] years[.]"[3] Williams maintains that "the fact that [he] was fortunate enough not to be convicted of the greater offenses should not have been to his detriment." *See Simms v. State*, 288 Md. 712, 723, 421 A.2d 957 (1980).

In *Simms*, the Court of Appeals addressed the question of "whether, when a defendant is charged with a greater offense and a lesser included offense which carries a higher maximum penalty, and when he is *acquitted* of the greater and convicted of the lesser, [he can] properly receive a more severe sentence than could have been imposed had he been convicted of the greater charge." *Id.* at 719, 421 A.2d 957 (emphasis in original). Simms was tried on charges of assault with intent to rob and simple assault, which, "under the prosecution's evidence and theory of the case, . . . were based upon the same acts." *Id.* at 715, 421 A.2d 957. After Simms was convicted of simple assault, but acquitted of assault with intent to rob, the court sentenced Simms to twelve years' imprisonment. *Id.* at 716–17, 421 A.2d 957.

On appeal, Simms "contended that because the maximum punishment for assault with intent to rob [was] ten years, [his] sentence of twelve years for the lesser included offense of simple assault was improper." *Id.* at 717, 421 A.2d 957. Vacating Simms's sentence, the Court of Appeals stated:

> To uphold the twelve year [sentence] under these circumstances would be to sanction an extreme anomaly in the criminal law. It would permit [Simms] to be punished more

Article ("CL"), stated that a person who committed or attempted to commit robbery with a dangerous or deadly weapon was "subject to imprisonment not exceeding [twenty] years."

**3.** Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, Section 486(d), *recodified as* CL Section 3–402(b), stated that a person who committed or attempted to commit a robbery was "subject to imprisonment not exceeding [fifteen] years."

severely because of an acquittal on a charge. He would have fared better if he were less successful or had pled guilty to the greater charge of assault with intent to rob.

Furthermore, Simms ... received something more severe than the maximum for which he was prosecuted. When the State decided to charge assault with intent to rob as well as simple assault based on the same acts, and to proceed to trial on both charges, the State was ... seeking a conviction carrying a maximum possible sentence of ten years' imprisonment. ... Under these circumstances, it is unfair to permit the State to exact a more severe and unanticipated penalty than that which could have been imposed if the prosecution had been wholly successful.

*Id.* at 723–24, 421 A.2d 957 (citations omitted). *See also Dixon v. State,* 364 Md. 209, 248–49, 772 A.2d 283 (2001) (where, after first trial, court imposed sentence of ten years for greater offense of attempted voluntary manslaughter and twenty years for lesser included offense of first degree assault, and State dismissed charge of attempted voluntary manslaughter at retrial, court's sentence of twenty years for first degree assault after retrial was illegal, because court was required to merge original first degree assault conviction into conviction for attempted voluntary manslaughter).

We reach a similar conclusion here. Although the maximum punishment for robbery with a dangerous and deadly weapon is twenty years, Williams was sentenced to 25 years for first degree assault of Ambrose, a lesser included offense of robbery of Ambrose with a dangerous and deadly weapon. *See Gerald v. State,* 137 Md.App. 295, 312, 768 A.2d 140 (2001) (merging a conviction for first degree assault into a conviction for robbery with a dangerous and deadly weapon). Because Williams received something more severe than the maximum for which he was prosecuted, it would be unfair to permit the State to exact a more severe and unanticipated penalty from him than that which could have been imposed if the State had been wholly successful. *See Simms,* 288 Md. at 724, 421 A.2d 957. Hence, we vacate Williams's sentence for first degree

assault of Ambrose, and direct the court on remand to re-sentence Williams on that count to no more than twenty years.

The State contends that, because "there was evidence from [which] the jury could infer that [Ambrose] was assaulted in the first degree based on conduct separate and distinct from the conduct that established the ... robbery" with a danger-ous and deadly weapon, the offenses do not merge. This contention is unpersuasive. Williams's charging document is ambiguous as to the particular act for which he was charged with first degree assault of Ambrose. *See Gerald,* 137 Md. App. at 312, 768 A.2d 140 (a conviction for first degree assault merges into a conviction for robbery with a dangerous and deadly weapon when the charging document is ambiguous as to the particular act alleged to have constituted first degree assault). Moreover, the court did not instruct the jury as to "how the assault and robbery charges related to one another, how they differed, and what the jury needed to find to convict under both charges." *Id.* (citations omitted). In light of the court's failure to give curative instructions, and the ambiguity of Williams's charging document, we must resolve the question of whether the charges of robbery and assault of Ambrose were based upon the same conduct in Williams's favor. *Id.* ("[A]ny ambiguity in [a charging document] or as to how the jury understood the charges must be resolved in [the defen-dant's] favor." (citation omitted)).

Although we agree with Williams that we are re-quired to merge his conviction for first degree assault of Ambrose into the offense of robbery of Ambrose with a dangerous and deadly weapon, we do not agree that we are required to merge his convictions for first degree assault into the offense of simple robbery. "In Maryland, the required evidence test is usually used to determine whether two of-fenses arising out of the same act merge." *Marquardt v. State,* 164 Md.App. 95, 148, 882 A.2d 900 (2005) (citations omitted). "The focus is on the [']elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct

element or distinct elements, the former merges into the latter.[']" *Id.* (quoting *State v. Jenkins*, 307 Md. 501, 517, 515 A.2d 465 (1986)).

Here, Williams was charged with first degree assault, which can be committed in two ways: by "intentionally caus[ing] or attempt[ing] to cause serious physical injury to another[,]" or by "commit[ting] an assault with a firearm[.]" Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27, Section 12A–1, *recodified as* CL Section 3–202(a). Williams was also charged with simple robbery, which, at the time, we defined as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear ... or, more succinctly, as larceny from the person, accompanied by violence or putting in fear[.]" *West v. State*, 312 Md. 197, 202, 539 A.2d 231 (1988) (citations omitted). *Accord Martin v. State*, 174 Md.App. 510, 516, 922 A.2d 598 (2007). Neither the element of an intentional cause or attempt to cause serious physical injury nor the use of a firearm is included in the offense of simple robbery. Hence, Williams's convictions for first degree assault do not merge into the offense of simple robbery.

■ We further conclude that Williams's conviction for first degree assault of David does not merge into the offense of robbery of Ambrose with a dangerous and deadly weapon. Because each of these offenses were committed against a different victim, they are separate and distinct. *See Borchardt v. State*, 367 Md. 91, 148, 786 A.2d 631 (2001) ("[T]he unit of prosecution for the crime of robbery is the individual victim from whose person or possession property is taken by the use of violence or intimidation."), *cert. denied*, 535 U.S. 1104, 122 S.Ct. 2309, 152 L.Ed.2d 1064 (2002). Moreover, because Williams took nothing in which David had ownership, custody, or a legal interest, Williams did not rob David. *See Miles v. State*, 88 Md.App. 248, 259, 594 A.2d 634 (1991) ("In order to be the victim of a robbery, a person must therefore either own, have custody of, or otherwise have a legal interest

in the property."). Hence, we do not vacate Williams's sentence for first degree assault of David.

## II.

■ Williams contends that the court "erred in imposing separate sentences" for his convictions for first degree assault and first degree burglary. Conceding that the offenses do not merge under the required evidence test, *see Marquardt, supra*, 164 Md.App. at 148, 882 A.2d 900, he claims that the court "should have merged the offenses under the rule of lenity[,] because the convictions arose out of a single transaction[,] and there is no indication by the General Assembly of an intent to punish a defendant separately for the offenses in such a situation."

In *Marquardt*, we stated:

The required evidence test is the threshold standard for determining when two offenses merge, but, in addition,

we have applied as a principle of statutory construction the "rule of lenity," which "provides that doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction [' "]will be resolved against turning a single transaction into multiple offenses.[" ' "]

*Williams*, 323 Md. [312,] 321, 593 A.2d 671 [(1991) (quoting *White v. State*, 318 Md. 740, 744, 569 A.2d 1271 (1990) (quoting *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955))) ].... "[I]f we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge." *Monoker v. State*, 321 Md. 214, 222, 582 A.2d 525 (1990) [ (citations omitted)]. The relevant inquiry when applying the rule of lenity is "whether the two offenses are 'of necessity closely intertwined' or whether one offense is 'necessarily the overt act' of the other." *Pineta v. State*, 98 Md.App. 614, 620–21, 634 A.2d 982 (1993) (quoting *[John-*

*son] v. State,* [56 Md.App. 205, 215, 467 A.2d 544 (1983)] )
(emphasis in *Pineta* ).

*Marquardt,* 164 Md.App. at 149–50, 882 A.2d 900 (footnotes
omitted).

Here, Williams committed first degree burglary when he
broke and entered Ambrose's home with the intent to commit
theft or a crime of violence.[4]   Because the burglary was
complete before Williams assaulted Ambrose and David, the
burglary was not an "overt act" of the assaults.  *Id.* at 150,
882 A.2d 900.  Moreover, the language of the statutes defining
the offenses does not indicate any "doubt or ambiguity as to
whether the legislature intended that" the offenses be pun-
ished distinctly.  *Id.* at 149, 882 A.2d 900.  Hence, we conclude
that the offenses do not merge under the rule of lenity.

**SENTENCE FOR FIRST DEGREE ASSAULT OF
ROCHELLE AMBROSE VACATED.  JUDGMENT OTH-
ERWISE AFFIRMED.  CASE REMANDED TO THE
CIRCUIT COURT FOR BALTIMORE COUNTY FOR
FURTHER PROCEEDINGS CONSISTENT WITH THIS
OPINION.  COSTS TO BE PAID ONE–HALF BY AP-
PELLANT AND ONE–HALF BY BALTIMORE COUN-
TY.**

---

4. Md.Code (1957, 1996 Repl.Vol., 2000 Supp.), Art. 27 Section 29,
   *recodified as* CL Section 6–202, stated that "[a] person [who] break[s]
   and enter[s] the dwelling of another with the intent to commit theft or a
   crime of violence ... is guilty of the felony of burglary in the first
   degree[.]"