*State of Maryland v. Willie B. Stewart*
No. 53, September Term 2018

**Criminal Law – Inconsistent Verdicts**.  The indictment charged the defendant with robbery, second-degree assault, and theft.  The jury returned a guilty verdict on the robbery and theft charges and a not guilty verdict on the second-degree assault charge.  The verdicts on the robbery and assault charges were not inconsistent so as to require reversal of the robbery conviction.

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term 2018

---

STATE OF MARYLAND

v.

WILLIE B. STEWART

---

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

---

Per Curiam Opinion

---

Filed: June 25, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

## Background

Respondent Willie B. Stewart was charged in the Circuit Court for Baltimore County with various offenses that allegedly occurred at an ice cream store before it opened on August 12, 2016. In particular, he was charged with robbery of Brian Rampmeyer, the owner of the store, second-degree assault of Mr. Rampmeyer, and theft of property with a value less than $1,000.

The trial took place on May 23, 2017. At the close of the evidence, the Circuit Court denied a defense motion for judgment of acquittal on each of the three counts, thus finding that there was sufficient evidence to create a jury issue as to each of the charges. The court then instructed the jury on the law governing the alleged offenses. Pertinent to this appeal, the court instructed the jury as follows concerning robbery:

> The Defendant is charged with the crime of robbery. Robbery is the taking and carrying away of property from someone else by force or threat of force with the intent to deprive the victim of the property. To convict the Defendant of robbery, the State must prove that the Defendant took the property from Brian Rampmeyer, that the Defendant took the property by force or threat of force, and that the Defendant intended to deprive Brian Rampmeyer of the property. Property means anything of value.

The robbery instruction was evidently based on a pattern jury instruction developed by a committee of the Maryland State Bar Association ("MSBA").[1]

Also pertinent to this appeal, the court instructed the jury as follows concerning second-degree assault:

---

[1] *See* MSBA, Maryland Criminal Pattern Jury Instructions (2d ed. 2018), MPJI-Cr 4:28A. This formulation is consistent with the case law concerning the offense of robbery. *See, e.g., Metheny v. State*, 359 Md. 576, 596, 605-9 (2000).

The Defendant is charged with the crime of assault. Assault is intentionally frightening another person with the threat of immediate physical harm. To convict the Defendant of assault, the State must prove the Defendant committed an act with the intent to place Brian Rampmeyer in fear of immediate physical harm, that the Defendant had the apparent ability at that time to bring about physical harm, and that Brian Rampmeyer reasonably feared immediate physical harm, and that the Defendant's actions were not legally justified.

Like the robbery instruction, the court's instruction on second-degree assault was based on an MSBA pattern instruction concerning second-degree assault.[2]

The parties agree that the Circuit Court's instructions on robbery and second-degree assault were accurate statements of the law governing those charges. There was no dispute that the evidence presented at trial generated these two instructions. No objection was made to these instructions – or any of the court's other instructions.

The jury found Mr. Stewart guilty of the robbery and theft charges, but acquitted him of the second-degree assault charge. Immediately after the jury returned the verdict, Mr. Stewart's counsel requested a bench conference. At the bench conference, he told the court that, in his view, the verdicts on the robbery and second-degree assault charges were inconsistent and that the jury should be required to continue to deliberate until it reached consistent verdicts. The State responded that the verdicts were not inconsistent. The

---

[2] *See* MSBA, Maryland Criminal Pattern Jury Instructions (2d ed. 2018), MPJI-Cr 4:01A. This Court has recognized this formulation as a correct statement of Maryland law on second-degree assault of the intent-to-frighten type. *Jones v. State*, 440 Md. 450, 455 (2014).

Circuit Court agreed with the State and declined to take further action on that ground.[3]

At Mr. Stewart's sentencing on July 25, 2017, the Circuit Court merged the theft conviction into the robbery conviction and sentenced him to 15 years imprisonment.

Mr. Stewart appealed his convictions, solely on the ground that the trial court had erred in accepting inconsistent verdicts. In an unreported decision, the Court of Special Appeals reversed the conviction on the robbery count. The intermediate appellate court based its holding on a distinction between "legally inconsistent" verdicts and "factually inconsistent" verdicts made in *McNeal v. State*, 426 Md. 455 (2012), which held that a verdict in a criminal case that is "legally inconsistent" (as opposed to a verdict that is only "factually inconsistent") is unacceptable. Applying that distinction to this case, the Court of Special Appeals concluded that the guilty verdict on the robbery conviction should be reversed. It summarized case law concerning the elements of robbery and second-degree assault and reasoned that, in light of the "uncontradicted evidence" presented at trial, the guilty verdict on the robbery charge was legally inconsistent with the acquittal on the second-degree assault charge because the assault offense was a lesser-included offense of the robbery. Accordingly, the intermediate appellate court overturned the guilty verdict on the robbery count and remanded the case for sentencing on the theft count. *Stewart v. State*,

---

[3] When the jury was polled, it appeared that one juror disagreed with the announced verdict and the jury was sent back to resume deliberations to reach a unanimous verdict. The jury later returned the same verdict initially announced, this time unanimously.

No. 1291 (Sept. 2017 Term), 2018 WL 3777459 (August 8, 2018).[4]

The State filed a petition for a writ of *certiorari*, which we granted. 461 Md. 613 (2018).

**Disposition**

A majority of this Court agrees that the judgment of the Court of Special Appeals should be reversed and that the guilty verdict on the robbery count should be affirmed.

The members of the Court who agree with this disposition do so for somewhat different reasons. Three judges – in an opinion by Judge McDonald (joined by Chief Judge Barbera and Senior Judge Adkins) – would not be concerned with distinguishing a "legally inconsistent" verdict from a "factually inconsistent" one, but rather with whether the verdict demonstrates that the jury disregarded the trial court's instructions on the law. In their view, a reviewing court must consider the instructions given by the trial court and whether the jury's verdict, on its face, shows that the jury disregarded those instructions. Concluding that the verdict in this case does not demonstrate that the jury disregarded the court's instructions, they would hold that the guilty verdict on the robbery count should not be reversed on the ground of inconsistency.

Two judges – in an opinion by Judge Watts (joined by Judge Getty) – would apply a two-step analysis in which the reviewing court first confirms that the trial court correctly instructed the jury on the elements of the offenses and then ascertains whether the verdicts

_____

[4] Judge Kehoe filed a brief concurring opinion that agreed with the analysis of the majority of the panel, but he stated that "there may be other aspects" to be analyzed in the consideration of inconsistent verdicts that had not been raised by the parties in this case.

4

are "legally inconsistent" – that is, whether the charge of which the jury found the defendant not guilty is a lesser-included offense of the charge of which the jury found the defendant guilty. Applying that analysis, they would reach a different conclusion from the Court of Special Appeals and hold that the guilty verdict on the robbery charge in this case was not "legally inconsistent" with the not guilty verdict on the second-degree assault charge because, in their view, second-degree assault of the intent-to-frighten type is not a lesser-included offense of robbery. In addition, upon review of the evidence at trial, they conclude that the evidence satisfied the elements of robbery, but did not establish the elements of second-degree assault of the intent-to-frighten type.

Two members of the Court dissent from the Court's disposition of this appeal. Judge Greene agrees with Judge Watts that the analysis should distinguish "legally inconsistent" verdicts from "factually inconsistent" verdicts. However, he would adopt the analysis of the Court of Special Appeals and hold that, because second-degree assault is generally a lesser-included offense of robbery, the guilty verdict on the robbery count in this case was "legally inconsistent" with the not guilty verdict on the second-degree assault count and therefore should be reversed. He would affirm the judgment of the Court of Special Appeals.

Judge Hotten would follow the same framework as Judge Watts and Judge Greene – *i.e.*, she would assess whether a verdict is "legally inconsistent" by looking to whether one of the charged offenses is a lesser-included offense of another charge. In her view, case law has established that second-degree assault, of either the battery or intent-to-frighten variety, is a lesser-included offense of robbery. She disagrees with Judge Watts

5

as to whether the evidence at trial fell short of proof of second-degree assault. Accordingly, Judge Hotten would hold that the verdicts in this case were legally inconsistent and the guilty verdict on the robbery count must be reversed. She would affirm the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTION TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY. RESPONDENT TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

Circuit Court for Baltimore County
Case No. 03-K-16-004418
Argued: February 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term 2018

_____

STATE OF MARYLAND

v.

WILLIE B. STEWART

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by McDonald, J.,
which Barbera, C.J., and Adkins, J., join.

_____

Filed: June 25, 2019

I agree with the Court's disposition of this case and have no quarrel with Judge Watts' thorough discussion of the recent case law in Maryland on inconsistent verdicts. That case law, however, has led me to reconsider our approach to this issue.

The United States Supreme Court has held that, under federal law, inconsistent verdicts in a criminal case generally do not entitle the defendant to have a guilty verdict overturned. *United States v. Powell*, 469 U.S. 57 (1984). Until relatively recently, this Court had a similar view. *E.g.*, *State v. Williams*, 397 Md. 172, 189 (2007). There has been a fair amount of commentary expressing discomfort with the holding in *Powell* and an effort in some courts, including this one, to come up with a theory of when one's tolerance for seemingly inconsistent verdicts is exhausted. *See, e.g.,* Eric L. Muller, *The Hobgoblin of Little Minds?  Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 771 (1998); Ashlee Smith, Comment, *Vice-A-Verdict: Legally Inconsistent Jury Verdicts Should Not Stand in Maryland*, 35 U. Balt. L. Rev. 395 (2006) (recommending how the analysis in the Muller article might be applied in Maryland and proposing that Maryland courts define a category of "legally inconsistent" verdicts); *State v. Davis*, 466 S.W.3d 49, 75-76 (Tenn. 2015) (collecting cases).

In response to these concerns, our Court recently adopted a distinction between "factually inconsistent" verdicts – tolerated – and "legally inconsistent" verdicts – not tolerated. *See McNeal v. State*, 426 Md. 455 (2012) *adopting rationale suggested in Price v. State*, 405 Md. 10, 35-38 (2008) (Harrell, J., concurring) (citing and relying on Smith and Muller articles). Other courts have made similar distinctions, sometimes devising

additional categories of inconsistent verdicts.[1] The motivation for making such distinctions

seems to be a concern that a court not intrude on the jury's factfinding function while also

ensuring that the jury has not taken the law into its own hands.[2]

In my view, the attempt to define and contrast a "factually inconsistent" verdict from

a "legally inconsistent" one has been a valiant attempt to distinguish between inconsistent

verdicts that we can live with and those that we cannot. However, the effort to discern the

difference between the abstract categories of "factually inconsistent" and "legally

---

[1] The Supreme Court in *Powell* alluded to a separate category of logically inconsistent verdicts and reserved judgment on whether such verdicts could be upheld. *See United States v. Powell*, 469 U.S. 57, 69 n.8 (1984) (referring to such a verdict as one in which a guilty verdict on one count "logically" precludes a guilty verdict on another count). By contrast, the concurring opinion in *Price* equates a "logically inconsistent" verdict with a "factually inconsistent" verdict – *i.e.*, the type of inconsistent verdict that will be upheld under our recent precedent in Maryland.

Other courts have identified yet other categories of inconsistent verdicts. *See, e.g., State v. Connelly*, 748 So.2d 248, 252 (Fla. 1999) (distinguishing "truly inconsistent" verdicts from "factually inconsistent" ones); *Commonwealth v. Medeiros*, 921 N.E.2d 98, 102-5 (Mass. 2010) (distinguishing verdicts that are "impossible at law" or that concern crimes that require a "united act" from other types of inconsistent verdicts); *State v. Arroyo*, 973 A.2d 1254, 1267-68 (Conn. 2009) (noting that Connecticut cases had recognized three distinct categories of inconsistent verdicts – factually inconsistent, legally inconsistent, and logically inconsistent); *State v. Halstead*, 791 N.W.2d 805, 807-8 (Iowa 2010) (identifying four categories of inconsistent verdicts – factually inconsistent, legally inconsistent, verdicts that create a "compound inconsistency," and "mutually exclusive" verdicts); *People v. Tucker*, 431 N.E.2d 617, 618 n.1 (N.Y. 1981) (noting that some courts distinguish "repugnant" verdicts from those that are merely "inconsistent"); *see generally* Annotation, *Inconsistency of criminal verdict as between different counts of indictment or information*, 18 ALR 3d 259.

[2] *See, e.g., McNeal*, 426 Md. at 472 (in adopting the distinction between "legally inconsistent" and "factually inconsistent" verdicts, "we reaffirm the historic role of the jury as the sole fact-finding body").

3

inconsistent" has proven to be more of a distraction than a useful rubric.

Upon reflection, the critical factor in these cases for determining when a guilty verdict that is allegedly inconsistent with an acquittal on another charge should be reversed on the ground of inconsistency is evident. Under the concurring opinion in *Price*, the Court's opinion in *McNeal*, and subsequent opinions, the key question is whether the jury verdict on its face indicates that the jury failed to follow the trial court's proper instructions on the law governing the charged offenses.[3] If the answer to that question is "yes," then the guilty verdict warrants reversal.[4] However, if the trial court's instructions accurately describe the elements of the offenses and if the jury verdict does not indicate on its face that the jury failed to follow those instructions, then the guilty verdict should be upheld.

In the end, it seems easier to conduct the analysis by going directly to that question without the intermediate step of trying to fit the verdict into one of two – or more[5] – abstract categories. The real concern with a seemingly inconsistent verdict is not what label we can

---

[3] *Price*, 405 Md. at 35 (Harrell, J., concurring) ("a legally inconsistent verdict occurs where the jury acts contrary to a trial judge's proper instructions regarding the law"); *McNeal*, 426 Md. at 472 (affirming conviction on one count allegedly inconsistent with not guilty verdict on separate count because the "verdicts rendered by the jury did not misapply facially the elements of the counts against [the defendant]"); *Givens v. State*, 449 Md. 433, 454, 474 (2016) (quoting *Price* concurrence and stating that "[l]egally inconsistent verdicts are, more often than not, immediately recognizable").

[4] This result also accords with part of the reasoning underlying this Court's long-held view that inconsistent verdicts in bench trials are not tolerated. *Shell v. State*, 307 Md. 46, 56-57 (1986) (stating that it "would make utterly no sense" for a judge to instruct a jury on the law relating to two charged offenses if "a trial judge himself is permitted to ignore" it).

[5] *See* footnote 1 above.

4

attach to it, but whether the jury disregarded the trial court's instructions on the law in reaching a guilty verdict on a particular count.

Thus, when confronted with the possibility of an inconsistent verdict, a court should first consider the specific instructions that the trial court gave the jury on the particular charges.[6] To illustrate, assume the jury was told in the court's instructions that it must find A to convict on the first charge and must find A + B to convict on the second charge. If the jury finds the defendant not guilty on the first charge, a guilty verdict on the second charge means that the jury necessarily disregarded the court's instructions on the law.[7]

On the other hand, if the jury was told that it must find A to convict on the first charge and B + C to convict on the second charge and the jury finds the defendant not guilty on the first charge, a guilty verdict on the second charge does not mean, in and of itself, that the jury disregarded the court's instructions on the law.[8] This would be true

---

[6] In this discussion, I assume that the trial court correctly instructs the jury on the law concerning the charges and that the evidence at trial generates the instructions given by the court. If either is not true, there would be independent grounds for appeal separate from any issue of inconsistency of the verdicts. *See, e.g., Montgomery v. State*, 206 Md. App. 357 (2012) (deciding whether trial court properly denied motions for judgment of acquittal concerning sufficiency of evidence to prove robbery and second-degree assault); *Martin v. State*, 174 Md. App. 510, 525-26 (2007) (deciding whether robbery instruction given by trial court was correct); *see also* Maryland Rules 4-324 (motion for judgment of acquittal), 4-325(e) (objections to jury instructions).

[7] This was precisely the situation in *Price* where this Court reversed a guilty verdict on grounds of inconsistency. The trial court instructed the jury on drug trafficking crimes (A) and on the charge of possessing a firearm during a drug trafficking crime (A + B). The jury returned a verdict acquitting the defendant of drug trafficking crimes and convicting him of possession of a firearm during a drug trafficking crime.

[8] This appears to have been the situation in *McNeal*, where this Court held that a guilty verdict on the charge of possessing a regulated firearm following conviction of a

5

even if, had the jury returned *guilty* verdicts as to *both* charges, the first charge would be merged into the second for purposes of sentencing.[9]

When a reviewing court resolves a claim that a jury verdict in a criminal trial should be overturned on the ground of inconsistent verdicts, it is important to respect the boundary between the different functions of the trial judge – instructing on the applicable law – and the jury – determining the facts. The jury's verdict should be overturned on the basis that it is "inconsistent" only when that inconsistency means that the jury necessarily crossed that boundary by ignoring the trial judge's instructions on the law.[10] Conversely, a reviewing court should not try to resolve a claim of inconsistent verdicts by speculating how the jury carried out its function of sorting out the evidence at trial.[11]

---

disqualifying offense should not be reversed on the ground that it was inconsistent with the acquittal of the defendant of the offense of wearing, carrying, or transporting a handgun.

[9] The issue of whether "inconsistent" guilty and not guilty verdicts merit reversal of the guilty verdict should be kept distinct from the issue of whether a sentencing court should merge two guilty verdicts on the basis that one is a lesser-included offense of the other. In deciding whether a seemingly inconsistent verdict shows that the jury ignored the court's instructions on the law, a reviewing court should not second-guess the factual determinations of the jury. By contrast, in determining whether to merge counts for sentencing, a court may engage in its own evaluation of the facts of the case. *See Carroll v. State*, 428 Md. 679, 693-94 (2012) (grounds for merger of convictions are based on required evidence test, rule of lenity, and fundamental fairness).

[10] Although not directly related, it is similar to the concern that prohibits a trial court from advising a jury that it is the judge of the law, as well as the facts. *Cf. Montgomery v. State*, 292 Md. 84, 89 (1981) (unless there is a "sound basis" for a dispute as to the law of the crime, all legal issues are for the judge alone to decide); *Stevenson v. State*, 289 Md. 167, 179-80 (1980) (same).

[11] As this case illustrates, a court that applies the "factually inconsistent" versus "legally inconsistent" framework may find itself evaluating the facts of the case – which is the jury's function. For example, the analysis in the opinion of the Court of Special

In this case, there is no dispute that the jury instructions were generated by the evidence at trial and accurately described the elements of the offenses with which Mr. Stewart was charged. The trial court instructed the jury that a conviction for the assault count required that they find beyond a reasonable doubt that, among other things, the defendant intended to place the victim "in fear of immediate physical harm" and "had the apparent ability at that time to bring about the physical harm." It also instructed the jury that a conviction on the robbery count required that they find beyond a reasonable doubt that the defendant took property from the victim "by force or threat of force." In my view, a "threat of force" does not always or necessarily equate to an intent to place another in fear of *immediate physical harm* or necessarily involve the apparent ability to do so. The fact that a jury may acquit a defendant on an assault charge after receiving such instructions does not mean that it has ignored the court's instruction on the robbery charge in finding the same defendant guilty of that charge.

Thus, we cannot say, simply from looking at the verdicts in this case, that the jury failed to follow the court's instructions on the law. Accordingly, I would hold that Mr. Stewart's conviction of robbery should not be overturned on the basis of an "inconsistent" acquittal of second-degree assault.

---

Appeals was premised in part on its conclusion that the evidence at trial was "uncontradicted." It is true that the defense did not present any testimony. But defense counsel vigorously cross-examined the main prosecution witness and certainly disputed the prosecution's version of events in argument. It is impossible for us to say precisely how the jury may have agreed with the defense and discounted the prosecution's version. Similarly, in applying that same framework, the opinions of Judge Watts and Judge Hotten evaluate the sufficiency of the evidence to support the assault charge, although they reach different conclusions.

7

Chief Judge Barbera and Judge Adkins have advised that they join this opinion.

Circuit Court for Baltimore County
Case No. 03-K-16-004418
Argued: February 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term, 2018

_____

STATE OF MARYLAND

v.

WILLIE B. STEWART

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Watts, J., which Getty, J., joins.

_____

Filed: June 25, 2019

It is well-settled by this Court's case law that a guilty verdict and a not-guilty verdict can be inconsistent in one, or both, of two ways: factually and legally. A guilty verdict and a not-guilty verdict may be factually inconsistent where the two crimes "have common facts but distinct [] elements[.]" Givens v. State, 449 Md. 433, 437 n.1, 144 A.3d 717, 719 n.1 (2016) (citation omitted). A guilty verdict and a not-guilty verdict are legally inconsistent where the crime of which the jury finds the defendant not guilty is "an [] element of" the crime of which the jury finds the defendant guilty. Id. at 437 n.1, 144 A.3d at 719 n.1 (citation omitted). For example, a guilty verdict and a not-guilty verdict would be legally inconsistent if a jury found a defendant not guilty of drug trafficking, but found him or her guilty of possession of a firearm during and in relation to a drug trafficking crime. See id. at 474, 144 A.3d at 741. In a criminal case, factually inconsistent verdicts are permissible, while legally inconsistent verdicts are not. See id. at 437, 144 A.3d at 719.

This case requires us to clarify the method through which a court determines whether a guilty verdict and a not-guilty verdict are legally inconsistent—by ascertaining whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty, or by simply reviewing the jury instructions. We must also decide whether a guilty verdict as to robbery, and a not-guilty verdict as to second-degree assault of the intent-to-frighten type,[1] are legally inconsistent.

---

[1]There are three types of second-degree assault: "(1) intent to frighten, (2) attempted battery, and (3) battery." Jones v. State, 440 Md. 450, 455, 103 A.3d 586, 589 (2014) (cleaned up).

In the Circuit Court for Baltimore County, the State, Petitioner, charged Willie B. Stewart, Respondent, with robbery of Brian Rampmeyer, second-degree assault of Rampmeyer, and theft from a Baskin Robbins of property with a value of less than $1,000. At trial, Rampmeyer testified that, while he was working at the Baskin Robbins, Stewart, without openly displaying a gun, threatened to shoot and kill him if he did not follow Stewart's instructions, then told him to empty the cash register. Rampmeyer obeyed, and Stewart took the cash and left.

The jury found Stewart guilty of robbery and theft, and not guilty of second-degree assault of the intent-to-frighten variety. Stewart's counsel contended that the verdicts were inconsistent. The circuit court disagreed. Stewart appealed, and the Court of Special Appeals reversed his conviction for robbery, reasoning that it was legally inconsistent with his acquittal for second-degree assault. See Willie B. Stewart v. State, No. 1291, Sept. Term, 2017, 2018 WL 3777459, at *3-4 (Md. Ct. Spec. App. Aug. 8, 2018). The State filed a petition for a writ of *certiorari*, which this Court granted. See State v. Stewart, 461 Md. 613, 196 A.3d 905 (2018).

The State contends that the Court of Special Appeals erred in concluding that the verdicts were legally inconsistent. The State argues that a guilty verdict and a not-guilty verdict are legally inconsistent if and only if the jury violates the jury instructions by finding that, with respect to two crimes, the State has both proven, and not proven, a fact that, according to the jury instructions, is an element of both crimes. Stewart responds that the verdicts are legally inconsistent because second-degree assault is a lesser-included offense of robbery.

- 2 -

I would conclude that, to determine whether a guilty verdict and a not-guilty verdict are legally inconsistent, a court must first confirm that the trial court correctly instructed the jury regarding the two crimes' elements, then ascertain whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty. In so ascertaining, the court may, if necessary, consider case law regarding what constitutes a lesser-included offense. In other words, the court is not required to limit its analysis to an examination of the jury instructions.

I would also hold that, here, the verdicts are not legally inconsistent because, as the parties agree, the circuit court correctly instructed the jury regarding the two offenses' elements, and because second-degree assault of the intent-to-frighten type is not a lesser-included offense of robbery. Second-degree assault of the intent-to-frighten type includes elements that robbery lacks. To secure a conviction for second-degree assault of the intent-to-frighten type, the State must prove that: (1) the defendant committed an act with the intent to place a victim in fear of immediate physical harm; (2) the defendant had the apparent ability, at the time, to bring about the physical harm; and (3) the victim was in reasonable apprehension of the physical harm. By contrast, to secure a conviction for robbery, the State must prove that the defendant took and carried away the property of someone else by force or threat of force with the intent to deprive the victim of the property. The State need not prove that the victim reasonably feared immediate physical harm, that the defendant intended to create such fear, or that the defendant was apparently able to physically harm the victim.

## BACKGROUND

### Trial

At trial, as a witness for the State, Rampmeyer testified that, on August 12, 2016, he was working at a Baskin Robbins in Owings Mills. Stewart entered the Baskin Robbins and asked: "[I]s there anyone here in the store with you?" Rampmeyer "felt threatened" and "felt like [his] life could be in danger[.]" Rampmeyer falsely said that there was another employee in the back, and asked: "[W]hat can I help you with today?" Stewart responded that, if Rampmeyer did not "make any sudden moves" and "follow[ed] his instructions[, Rampmeyer] would not be shot and killed." Although Rampmeyer did not see a gun, any other kind of weapon, or a bulge in Stewart's clothing, Stewart's left hand was close to his waistband when he threatened Rampmeyer. Stewart told Rampmeyer to empty the cash register, and he obeyed. Stewart took the cash, which was between $150 and $200, and left.

After both parties rested, the circuit court instructed the jury regarding the elements of robbery and second-degree assault of the intent-to-frighten type as follows:

> The Defendant is charged with the crime of robbery. Robbery is the taking and carrying away of property from someone else by force or threat of force with the intent to deprive the victim of the property. To convict the Defendant of robbery, the State must prove that the Defendant took [] property from Brian Rampmeyer, that the Defendant took the property by force or threat of force, and that the Defendant intended to deprive Brian Rampmeyer of the property. Property means anything of value.
>
> The Defendant is charged with the crime of assault. Assault is intentionally frightening another person with the threat of immediate physical harm. To convict the Defendant of assault, the State must prove the Defendant committed an act with the intent to place Brian Rampmeyer in fear of immediate physical harm, that the Defendant had the apparent ability at that time to bring about the physical harm, [] that Brian Rampmeyer

- 4 -

reasonably feared immediate physical harm[,] and that the Defendant's actions were not legally justified.

Stewart's counsel did not object to any of the jury instructions.

The jury found Stewart guilty of robbery and theft, and not guilty of second-degree assault of the intent-to-frighten type. Immediately after the jury's foreperson announced the verdicts, Stewart's counsel requested a bench conference, which the circuit court granted. At the bench conference, Stewart's counsel contended that the verdicts were inconsistent, and requested that the circuit court instruct the jury to resume deliberating until it reached consistent verdicts. The prosecutor responded that the verdicts were consistent because one of the elements of robbery is "a threat of force[,]" whereas one of the elements of second-degree assault is "an overt act." The prosecutor observed that it was possible that the jury believed that Stewart had not committed an overt act. The circuit court concluded that the verdicts were consistent, and denied Stewart's counsel's request.[2]

**Opinion of the Court of Special Appeals**

Stewart appealed. On August 8, 2018, the Court of Special Appeals reversed Stewart's conviction for robbery and remanded for sentencing on his conviction for theft.

---

[2]Afterward, the courtroom clerk polled the jury, and one of the jurors responded "No" to the question: "[I]s this your verdict?" The circuit court instructed the jury to resume deliberating. Later, the jury returned to the courtroom, and its foreperson announced the same verdicts that she had earlier. At a bench conference, Stewart's counsel again requested that the circuit court instruct the jury to resume deliberating until it reached consistent verdicts, and the circuit court reiterated that the verdicts were consistent. The courtroom clerk polled the jury again, and all of the jurors responded "Yes" to the question: "[I]s this your verdict?"

- 5 -

See Stewart, 2018 WL 3777459, at *4. The panel of the Court of Special Appeals[3] reasoned that the verdicts were "legally inconsistent because, under the undisputed facts, the same conduct underlies the convictions for robbery and assault." Id. at *2. Specifically, the Court of Special Appeals explained that, "although Rampmeyer did not see a gun," Stewart's threat to shoot and kill him was a "threat of force that effected the theft." Id. at *3. The Court of Special Appeals reasoned that the defendant's intimidation of the victim satisfies elements of both robbery and second-degree assault of the intent-to-frighten type. See id. at *3.

## Petition for a Writ of *Certiorari*

On September 21, 2018, the State petitioned for a writ of *certiorari*, raising the following two issues:

1. What is the proper analysis for determining when jury verdicts are legally inconsistent?

2. Where a[n oral] threat to obtain money was the basis for the robbery and assault charges, but the jury was instructed that second-degree "intent to frighten" assault required a finding that Stewart "committed *an act* with the intent to place [the] victim in fear of immediate physical harm," did the Court of Special Appeals err in holding that the verdicts of guilty of threat-of-force robbery and not guilty of assault [are] legally inconsistent?

(Emphasis and second alteration in original). On November 7, 2018, this Court granted the petition. See Stewart, 461 Md. 613, 196 A.3d 905.

---

[3]Judge Christopher B. Kehoe issued a concurring opinion, stating that he "agree[d] with the Majority's analysis," and that "there may be other aspects of [Stewart]'s inconsistent verdict contention[,] but this case is not the vehicle to consider them." Stewart, 2018 WL 3777459, at *4 (Kehoe, J., concurring).

- 6 -

## DISCUSSION

### The Parties' Contentions

The State contends that the Court of Special Appeals erred in concluding that the verdicts are legally inconsistent. The State argues that, in prior cases, when determining whether a guilty verdict and a not-guilty verdict are legally inconsistent, this Court and the Court of Special Appeals have focused on the jury instructions in each case. The State asserts that Stewart's counsel also relied on the jury instructions, given that, when he requested that the circuit court instruct the jury to continue deliberating until it reached consistent verdicts, he did not request that the circuit court provide the jury with case law regarding what constitutes a lesser-included offense. The State maintains that, accordingly, Stewart's counsel took the position that the jury should resolve the alleged legal inconsistency based on the jury instructions, as opposed to case law regarding what constitutes a lesser-included offense. The State contends that the Court of Special Appeals's approach in this case—namely, focusing on legal principles established in case law governing whether one crime is a lesser-included offense of another crime—usurps the jury's role as the finder of fact, would result in courts determining whether a guilty verdict and a not-guilty verdict are legally inconsistent based on principles on which the jury was not instructed, and essentially ignores the evidence and jury instructions in each case. The State argues that, here, the verdicts are legally consistent because the crimes of robbery and second-degree assault of the intent-to-frighten type have different elements.

Stewart responds that the verdicts are legally inconsistent because second-degree assault is a lesser-included offense of robbery. Stewart contends that, to determine whether

a guilty verdict and a not-guilty verdict are legally inconsistent, a court must first confirm that the trial court correctly instructed the jury regarding the two offenses' elements; if so, the court must then ascertain whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty. Stewart asserts that, during the second step of the analysis, the court must apply the "required evidence" test.[4]

In a reply brief, the State agrees with Stewart that a court should engage in a two-step analysis to determine whether a guilty verdict and a not-guilty verdict are legally inconsistent, and that the first step is to confirm whether the jury instructions regarding the two crimes' elements were correct. The State clarifies that, whereas Stewart contends that the second step is to review the crimes' elements in light of case law to determine whether one crime is a lesser-included offense of the other, its position is that the second step is to review the offenses' elements, as stated in the jury instructions, to determine whether the jury complied with the jury instructions.

**Standard of Review**

An appellate court reviews without deference a trial court's conclusion as to whether a guilty verdict and a not-guilty verdict are legally inconsistent. See Givens, 449 Md. at 447, 144 A.3d at 725.

---

[4]Under the "required evidence" test, where all of the elements of one offense are included in another offense, the first offense is considered a lesser-included offense of the second offense. Twigg v. State, 447 Md. 1, 13, 133 A.3d 1125, 1133 (2016) (citation omitted).

## Legally Inconsistent Verdicts

This Court has held that guilty verdicts may not be legally inconsistent, regardless of whether a jury or a trial court tried the defendant. See Givens, 449 Md. at 448, 144 A.3d at 725. Historically, however, this Court has not always held that a guilty verdict and a not-guilty verdict may not be legally inconsistent where a jury tries the defendant. See id. at 449, 144 A.3d at 726. In Leet v. State, 203 Md. 285, 293-94, 100 A.2d 789, 793-94 (1953), where a jury tried the defendant, this Court held that a guilty verdict and a not-guilty verdict could be legally inconsistent. "For decades after Leet, this Court repeated the principle that a guilty verdict" and a not-guilty verdict could be legally inconsistent where a jury tries the defendant. Givens, 449 Md. at 449, 144 A.3d at 726 (citations omitted).

Then, eleven years ago, in Price v. State, 405 Md. 10, 29, 949 A.2d 619, 630 (2008), "this Court effectively overruled Leet[] and its progeny" by holding that "inconsistent verdicts shall no longer be allowed." Givens, 449 Md. at 452, 144 A.3d at 728 (citation omitted). In Price, 405 Md. at 29, 949 A.2d at 630, this Court did not specify whether its holding applied to legally inconsistent verdicts, factually inconsistent verdicts, or both. That said, this Court observed that: the trial court instructed the jury that it could find the defendant guilty of possession of a firearm during and in relation to a drug trafficking crime only if the jury also found the defendant guilty of a drug trafficking crime; the jury found the defendant not guilty of all drug trafficking crimes with which the State had charged him; and, "[d]espite the trial [court]'s instructions and the acquittals, the jury found [the defendant] guilty of possession of a firearm during and in relation to a drug trafficking

crime[.]" Id. at 14-15, 949 A.2d at 622. This Court explained "that inconsistent jury verdicts are contrary to the law and contrary to the trial court's instructions[.]" Id. at 21, 949 A.2d at 626 (cleaned up).

In a concurring opinion, Judge Glenn T. Harrell, Jr. stated that this Court's holding applied to legally inconsistent verdicts, not factually inconsistent verdicts. See id. at 35, 949 A.2d at 634 (Harrell, J. concurring). Judge Harrell referenced multiple definitions of the term "legally inconsistent," stating:

> [A] legally inconsistent verdict occurs where a jury acts contrary to a trial [court]'s proper instructions regarding the law. . . . A legal inconsistency . . . occurs when an acquittal on one charge is conclusive as to an element [of] a charge on which a conviction has occurred. . . . [I]f the essential elements of the counts of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent. Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same [] element or elements of each crime were found both to exist and not to exist.

Id. at 35, 37-38, 949 A.2d at 634, 635-36 (Harrell, J., concurring). Judge Harrell explained that, in Price, the verdicts were legally inconsistent because the jury found the defendant not guilty of all drug trafficking charges, but found him guilty of possession of a firearm during and in relation to a drug trafficking crime. See id. at 38, 949 A.2d at 636 (Harrell, J., concurring).

Four years later, in McNeal v. State, 426 Md. 455, 458-59, 44 A.3d 982, 984 (2012), this Court clarified its holding in Price by adopting the aforementioned section of Judge Harrell's concurring opinion in Price, and concluding that factually inconsistent verdicts are permissible, while legally inconsistent verdicts are not. In McNeal, 426 Md. at 458-

- 10 -

59, 44 A.3d at 984-85, the State offered evidence that a law enforcement officer found a handgun on the person of the defendant, who had been convicted of a disqualifying crime. The jury found the defendant guilty of possession of a regulated firearm having been convicted of a disqualifying crime, but found the defendant not guilty of wearing, carrying, or transporting a handgun. See id. at 460, 44 A.3d at 985. The defendant appealed, and the Court of Special Appeals affirmed his convictions. See id. at 461, 44 A.3d at 986.

This Court affirmed as well, holding that the verdicts were merely "'curious' or factually inconsistent[.]" Id. at 473, 44 A.3d at 993. This Court explained that the verdicts were not legally inconsistent, as they "did not misapply facially the elements of the [crimes]. . . . [P]ossession of a handgun contains [] elements that are distinct from the elements [of] wearing, carrying, or transporting a handgun[.] . . . There is no lesser[-]included offense or predicate crime involved[.]" Id. at 472, 44 A.3d at 992-93. This Court stated: "A reviewing court, distanced from a jury, is equipped to evaluate independently the [] elements of [] crimes[,] and make a determination as to whether the verdicts are compatible with these elements." Id. at 473, 44 A.3d at 993.

**Lesser-Included Offenses**

In McNeal, 426 Md. at 458 n.1, 44 A.3d at 984 n.1, this Court explained that a guilty verdict and a not-guilty verdict are legally inconsistent where the crime of which the jury finds the defendant not guilty is a lesser-included offense of the crime of which the jury finds the defendant guilty. Under "the 'required evidence test'"—"also known as the 'same

evidence test,' 'Blockburger test,'[5] or 'elements test'"—Crime A is a lesser-included offense of Crime B where "all of the elements of [Crime A] are included in [Crime B], so that only [Crime B] contains a distinct element[.]" <u>Abeokuto v. State</u>, 391 Md. 289, 353, 893 A.2d 1018, 1055 (2006) (citation omitted). In other words, neither Crime A nor Crime B is a lesser-included offense of the other where each crime "contains an element [that] the other does not[.]" <u>Id.</u> at 353, 893 A.2d at 1055 (citation omitted).

## The Statutory Definition of Robbery

Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) ("CR") § 3-401(e) defines "robbery" as follows:

> "Robbery" retains its judicially determined meaning except that:
>
> (1) robbery includes obtaining the service of another by force or threat of force; and
>
> (2) robbery requires proof of intent to withhold property of another:
>
> > (i) permanently;
> >
> > (ii) for a period that results in the appropriation of a part of the property's value;
> >
> > (iii) with the purpose to restore it only on payment of a reward or other compensation; or
> >
> > (iv) to dispose of the property or use or deal with the property in a manner that makes it unlikely that the owner will recover it.

The Revisor's Note to CR § 3-401 states that subsection (e) "is new language derived

---

[5] The term "Blockburger test" comes from <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).

without substantive change from former Art. 27, § 486(b) and (a)(2)."

## The Elements of Assault of the Intent-to-Frighten Type and Robbery

In the Maryland Criminal Pattern Jury Instructions, second-degree assault of the intent-to-frighten type is described as follows:

Assault is intentionally frightening another person with the threat of immediate [offensive physical contact] [physical harm]. In order to convict the defendant of assault, the State must prove:

(1) that the defendant committed an act with the intent to place (name) in fear of immediate [offensive physical contact] [physical harm];

(2) that the defendant had the apparent ability, at that time, to bring about [offensive physical contact] [physical harm]; and

(3) that (name) reasonably feared immediate [offensive physical contact] [physical harm]; [and]

[(4) that the defendant's actions were not legally justified.]

MPJI-Cr 4:01A (brackets and underlining in original).

"Robbery is the taking and carrying away of property from [someone else] [someone's presence and control], by force or threat of force, with the intent to deprive the victim of the property." MPJI-Cr 4:28A (brackets in original). This Court has discussed robbery as the "taking and carrying away of the personal property of another from his [or her] person or in his [or her] presence by violence or putting in fear." Spencer v. State, 422 Md. 422, 439, 30 A.3d 891, 901 (2011) (cleaned up). The "force or threat of force" element has been discussed in terms of the use of "violence or putting in fear." Id. at 428, 30 A.3d at 895 (citation omitted). The "threat of force" element has also been described as the use of "intimidation." Id. at 429, 30 A.3d at 895 (cleaned up).

- 13 -

In <u>Dixon v. State</u>, 302 Md. 447, 458-63, 488 A.2d 962, 967-70 (1985), in discussing the elements of the offense of assault with intent to rob,[6] this Court defined the assault aspect of the offense and reviewed federal case law concerning robbery. In <u>Dixon</u>, <u>id.</u> at 452, 488 A.2d at 964, a defendant had under his arm a folded newspaper that was pointed at the victim, and he produced a note that demanded money. This Court held that, under those circumstances, the evidence was sufficient to establish the offense of assault with intent to rob. <u>See</u> <u>id.</u> at 464, 488 A.2d at 970. As to the assault element of the offense, this Court quoted the following definition of assault from <u>Lyles v. State</u>, 10 Md. App. 265, 267, 269 A.2d 178, 179 (1970):

> [A]ny attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is **any action or conduct reasonably tending to create the apprehension** in another that the person engaged therein is about to apply such force to him[ or her]. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention.

<u>Dixon</u>, 302 Md. at 458-59, 488 A.2d at 967 (emphasis added). In <u>Dixon</u>, <u>id.</u> at 464, 488 A.2d at 970, assault with the intent to rob, not robbery itself, was at issue.

---

[6]In Maryland, there once existed a crime called "assault with the intent to rob," or "assault with intent to rob." Assault with the intent to rob had three elements: "(1) an assault on [a] victim; (2) made by the [defendant]; (3) with the intent to rob." <u>Christian v. State</u>, 405 Md. 306, 316 n.6, 951 A.2d 832, 838 n.6 (2008) (citation omitted). Before October 1, 1996, Md. Code Ann., Art. 27, § 12 provided that "the crime of an assault with intent to rob" carried a minimum sentence of two years of imprisonment, and a maximum sentence of ten years of imprisonment. 1996 Md. Laws 3617-18 (Vol. VI, Ch. 632, H.B. 749). Effective October 1, 1996, Art. 27, § 12 was repealed and replaced with Md. Code Ann., Art. 27, §§ 12A and 12A-1—which, like CR §§ 3-203 and 3-202, criminalized second-degree assault and first-degree assault, respectively. 1996 Md. Laws 3619 (Vol. VI, Ch. 632, H.B. 749).

With respect to robbery, the Court considered federal case law decided under the federal bank robbery statute.[7] The Court stated that "[t]he gravamen of the action . . . is whether intimidation has been shown." Dixon, 302 Md. at 459, 488 A.2d at 968. This Court examined a series of federal cases in which defendants had been charged and convicted of bank robbery under the federal bank robbery statute. See id. at 459-63, 488 A.2d at 968-70. We noted that, in U.S. v. Jacquillon, 469 F.2d 380, 385 (5th Cir. 1972), cert. denied, 410 U.S. 938 (1973), the Fifth Circuit stated: "As used in [the federal bank robbery statute], intimidation means to make fearful or to put into fear. Proof of actual fear is not required in order to establish intimidation." Dixon, 302 Md. at 461, 488 A.2d at 969. After reviewing federal case law, we concluded: "[T]he cited cases make crystal clear that possession of an undisclosed weapon may be inferred from the surrounding facts and circumstances." Id. at 463, 488 A.2d at 970. We ultimately concluded that, in Dixon, id. at 464, 488 A.2d at 970, where, among other things, the defendant approached the victim with a written demand for money and a newspaper tightly under his arm in a manner that suggested a weapon, the evidence was sufficient to support the conviction for assault with intent to rob.

---

[7]At that time, the federal bank robbery statute, 18 U.S.C. § 2113(a), provided:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association . . . shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Dixon, 302 Md. at 459, 488 A.2d at 967-68 (cleaned up).

In Coles v. State, 374 Md. 114, 116, 123, 821 A.2d 389, 390-91, 394-95 (2003), where the defendant was convicted of three counts of robbery, as opposed to assault with intent to rob, this Court explained that, under the statute that the defendant was charged with violating—Art. 27, § 486—"the judicially determined meaning of robbery referred to in [the statute included] the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear," "and as larceny from the person, accompanied by violence or putting in fear." (Cleaned up). In Coles, id. at 116, 821 A.2d at 390-91, this Court held that the evidence was sufficient to support a defendant's convictions for robbery where, on three occasions, the defendant handed a bank teller a note in which he demanded cash. In discussing robbery, this Court observed that, "[t]he hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation. Robbery requires a taking of property of any value whatsoever which is accomplished by violence or putting in fear." Id. at 123, 821 A.2d at 395 (cleaned up).

In Coles, id. at 125, 821 A.2d at 395-96, this Court discussed the case of West v. State, 312 Md. 197, 206, 539 A.2d 231, 235 (1988), and observed that "we adopted the view that the mere snatching or sudden taking away of the property from the person of another does not constitute sufficient force, violence, or putting in fear to support a robbery conviction." (Cleaned up). In Coles, 374 Md. at 125, 821 A.2d at 396, actual force was not at issue; "rather, the question [was] whether there was sufficient evidence of intimidation, or placing in fear, to support [the defendant's] convictions for robbery." As to that issue, the Court reviewed the circumstances of each of the defendant's three

robberies. See id. at 129-30, 821 A.2d at 398-99. During the first robbery, the defendant entered a bank wearing a baseball hat, a scarf around his neck, and a jacket or shirt capable of concealing a weapon, approached a bank teller, gave the teller a bag and a note demanding money, and ordered the teller not to alert anyone. See id. at 129, 821 A.2d at 398. We stated that, "[g]iven the situation, [the defendant]'s demands and commands could have been interpreted by a reasonable person as suggesting a threat of bodily harm." Id. at 129, 821 A.2d at 398. Similarly, during the second robbery, the defendant approached a bank teller, and silently handed her a bag and a note, in which he demanded money and stated that no one would get hurt if the teller complied. See id. at 129-30, 821 A.2d at 398. The teller "reported that the incident was the scariest moment of her life." Id. at 130, 821 A.2d at 398 (cleaned up). We concluded that, "[a]lthough actual fear is not necessary . . . , evidence of it is nonetheless probative of whether a reasonable person would have been afraid under the same circumstances." Id. at 130, 821 A.2d at 398-99. During the third robbery, like the first two, the defendant, who wore a jacket capable of concealing a weapon, entered a bank, approached a teller, and gave her a bag and a note demanding money and "no alarms[.]" Id. at 130, 821 A.2d at 399. We concluded "that the evidence of [the defendant]'s conduct was sufficient for a rational fact finder to conclude that the constructive violence aspect of robbery was satisfied in the [] case." Id. at 130, 821 A.2d at 399.

In Spencer, 422 Md. at 425, 30 A.3d at 893, this Court held that the evidence was insufficient to support a defendant's conviction for robbery where the defendant simply told a cashier: "Don't say nothing." In Spencer, id. at 436, 30 A.3d at 899, this Court

- 17 -

stated: "This brief statement, by itself, would not cause an ordinary, reasonable person to have felt apprehension that [the defendant] was about to apply force." In Spencer, id. at 435, 30 A.3d at 899, this Court observed that, "[t]he threat of force or intimidation, which ha[d] been present in all of the cases where this Court has upheld robbery convictions, [was] simply absent in th[e] case." We concluded:

> Like *West*, [312 Md. 197, 539 A.2d 231,] there was no force used to take the property; there was no resistance on the part of the victim, and there was no injury or evidence of fear or intimidation. The State failed to prove an essential element of the robbery charge, and [the defendant]'s robbery conviction should not stand.

Spencer, 422 Md. at 437, 30 A.3d at 900.

### Analysis

I would conclude that, to determine whether a guilty verdict and a not-guilty verdict are legally inconsistent, a court must first confirm that the trial court correctly instructed the jury regarding the two crimes' elements, then ascertain whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty. In so ascertaining, the court may, if necessary, consider case law regarding what constitutes a lesser-included offense. In other words, the court is not required to limit its analysis to an examination of the jury instructions.

An inquiry into whether a guilty verdict and a not-guilty verdict are legally inconsistent is necessarily premised on the trial court having correctly instructed the jury

regarding the two offenses' elements.[8]  As this Court noted in <u>Givens</u>, 449 Md. at 454, 144

A.3d at 729, "legally inconsistent verdicts occur where a jury acts contrary to a trial court's

proper instructions regarding the law."  (Quoting <u>Price</u>, 405 Md. at 35, 949 A.2d at 634

(Harrell, J., concurring)) (cleaned up).  I agree with the parties that, where a defendant

contends that a guilty verdict and a not-guilty verdict are legally inconsistent, an appellate

court's first task is to confirm that the trial court correctly instructed the jury regarding the

two crimes' elements.[9]

Once an appellate court confirms that the trial court correctly instructed the jury

regarding the elements of the crimes, the appellate court's next task is to determine whether

the crime of which the jury found the defendant not guilty is a lesser-included offense of

the crime of which the jury found the defendant guilty.  This Court's holding in <u>McNeal</u>

---

[8]In my view, a court is not free to simply reconsider the approach to determining inconsistent verdicts.  It is well-established that, in Maryland, legally inconsistent verdicts are not permitted, and that determining whether one crime is a lesser-included offense of another is the method for determining legally inconsistent verdicts.  <u>See</u> <u>McNeal</u>, 426 Md. at 458 n.1, 472, 44 A.3d at 984 n.1, 992-93.  The doctrine of *stare decisis* mandates that this Court adhere to this approach.  <u>See</u> <u>Scott v. State</u>, 454 Md. 146, 183, 164 A.3d 177, 198 (2017).

[9]If the appellate court determines that the trial court incorrectly instructed the jury regarding the two offenses' elements, the appellate court must next decide whether the incorrect jury instruction warrants a remedy.  In ascertaining whether the defendant preserved for appellate review any issue as to the incorrect jury instruction, the appellate court should consider Maryland Rule 4-325(e), which provides, in pertinent part:

> No party may assign as error the giving [of] an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. . . . An appellate court, on its own initiative or on the suggestion of a party, may[,] however[,] take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

- 19 -

supports my conclusion. In <u>McNeal</u>, 426 Md. at 458 n.1, 44 A.3d at 984 n.1, this Court defined "legally inconsistent verdicts" as "those where a defendant is acquitted of a 'lesser[-]included' crime embraced within a conviction for a greater offense." This Court proceeded to apply this definition of "legally inconsistent verdicts" by concluding that, in <u>McNeal</u>, <u>id.</u> at 472, 44 A.3d at 992-93, the guilty verdict and the not-guilty verdict were not legally inconsistent because "[t]here [was] no lesser[-]included offense . . . involved[.]" In short, <u>McNeal</u> unequivocally indicates that, to determine whether a guilty verdict and a not-guilty verdict are legally inconsistent, an appellate court must ascertain whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty. Such an inquiry may require the appellate court to consider case law regarding what constitutes a lesser-included offense.

I find unworkable the State's position that, once the appellate court confirms that the trial court correctly instructed the jury regarding the two crimes' elements, the appellate court should "review the elements of the [two crime]s in light of the jury instructions to determine whether the jury acted 'contrary to' them." According to the State, an appellate court should not "review the elements of the offenses in light of case law" regarding what constitutes a lesser-included offense. From my perspective, if an appellate court could not consider case law regarding what constitutes a lesser-included offense, the appellate court would essentially be unable to review the two crimes' elements to determine whether the guilty verdict and the not-guilty verdict are legally inconsistent. Jury instructions are intended to aid the jury by providing an accurate and succinct description of the elements of an offense. The elements of crimes are defined by case law or statutes, and jury

instructions are intended to accurately set forth the elements of crimes as embodied in case law or statutes.

Further, in evaluating whether verdicts are legally consistent or inconsistent, an appellate court applies case law, such as Abeokuto, 391 Md. at 353, 893 A.2d at 1055, that explains how to use two crimes' elements to determine whether one of the crimes is a lesser-included offense of the other. The appellate court could not make such a determination if it considered nothing but the jury instructions, and blinded itself to case law regarding what constitutes a lesser-included offense.

As I understand it, the State's position is that a guilty verdict and a not-guilty verdict are legally inconsistent only where it can be determined that the jury acted contrary to the trial court's instructions. I would decline to adopt the State's position, which renders the outcome of a purely legal question—namely, whether a guilty verdict as to one crime and a not-guilty verdict as to another crime are legally inconsistent—solely dependent on the jury instructions and the verdicts in each particular case. Although not the circumstance here, this approach would ignore the possibility that the jury may have been improperly instructed as to the law. Simply put, a guilty verdict as to Crime A and a not-guilty verdict as to Crime B either are, or are not, legally inconsistent in all cases based on the elements of the crimes.

I am unconvinced by the State's premise that, under holding that I propose, "the jury [would] use one approach to determin[e] consistency and inconsistency, and [] the appellate court [would] use a different approach." Where a defendant's counsel contends that a guilty verdict and a not-guilty verdict are legally inconsistent, the trial court does not

submit to the jury the purely legal question of whether the guilty verdict and the not-guilty verdict are legally inconsistent. Instead, the trial court independently decides that question. If the trial court determines that the guilty verdict and the not-guilty verdict are not legally inconsistent, the trial court should let the verdicts stand; and, if the trial court determines that guilty verdict and the not-guilty verdict are legally inconsistent, the trial court should instruct the jury to resume deliberating until it reaches legally consistent verdicts. In no instance should a trial court allow a jury to decide whether a guilty verdict and a not-guilty verdict are legally inconsistent; that decision is exclusively for the trial court to make.

Having clarified the two-step test for determining whether a guilty verdict and a not-guilty verdict are legally inconsistent, I would apply that test to the question of whether Stewart's conviction for robbery and his acquittal of second-degree assault of the intent-to-frighten type are legally inconsistent. First, I would confirm that the circuit court correctly instructed the jury regarding the two crimes' elements.

Fortunately, here, the parties agree—and, I also agree—that the circuit court correctly instructed the jury regarding the elements of robbery and second-degree assault of the intent-to-frighten type. The circuit court quoted Maryland Criminal Pattern Jury Instructions 4:01A and 4:28A nearly verbatim. Maryland Criminal Pattern Jury Instruction 4:01A is a correct statement of the law; this Court has stated:

> A defendant commits second-degree assault of the intent-to-frighten type where: (1) the defendant commits an act with the intent to place a victim in fear of immediate physical harm; (2) the defendant has the apparent ability, at the time, to bring about the physical harm; and (3) the victim is aware of the impending physical harm.

Jones v. State, 440 Md. 450, 455, 103 A.3d 586, 589 (2014) (cleaned up). The victim must

- 22 -

be not only aware of, but also "in reasonable apprehension of[, the] imminent battery." Cruz v. State, 407 Md. 202, 209 n.3, 963 A.2d 1184, 1188 n.3 (2009) (cleaned up).

And, Maryland Criminal Pattern Jury Instruction 4:28A is a correct statement of the law; the State must prove that the defendant used either "force or [a] threat of force, the latter of which also is referred to as intimidation." Spencer, 422 Md. at 428-29, 30 A.3d at 895 (cleaned up). This Court has discussed the "force or [a] threat of force" element of robbery as the "taking and carrying away of the personal property of another from his [or her] person or in his [or her] presence by violence or putting in fear." West, 312 Md. at 202, 539 A.2d at 233. And, CR § 3-401(e) states that robbery "retains its judicially determined meaning[.]"

Significantly, under the robbery statute, case law discussing robbery, and Maryland Criminal Pattern Jury Instruction 4:28A, neither a victim's reasonable fear of immediate physical harm, the defendant's intent to create such a fear, nor the defendant's apparent ability to cause physical harm[10] is an element of robbery. Under Coles, 374 Md. 114, 821 A.2d 389, and Spencer, 422 Md. 422, 30 A.3d 891, as to robbery, it is not required that the

---

[10]Consistent with Maryland Criminal Pattern Jury Instruction 4:28A and our case law, a defendant's apparent ability to physically harm a victim is not an element of robbery. In Coles, 374 Md. at 125, 821 A.2d at 396, the defendant contended that the evidence was insufficient to support his convictions for robbery because there was no evidence that, among other things, "he had an 'apparent ability to carry out' [] a threat" of "'a specific and immediate battery[.]'" In rejecting the defendant's contention, this Court did not use the term "apparent ability," and instead phrased its holding as follows: "[T]he evidence . . . was more than sufficient to satisfy the element of intimidation[.]" Id. at 129, 821 A.2d at 398. When referring to an element of robbery, the word "intimidation" means a "threat of force[.]" Spencer, 422 Md. at 428-29, 30 A.3d at 895 (cleaned up). Coles is consistent with the conclusion that a defendant's apparent ability to physically harm a victim is not an element of robbery.

victim reasonably feared immediate physical harm, that the defendant intended to create such fear, or that the defendant had the apparent ability to inflict physical harm; what matters is that the defendant used either "force or [a] threat of force[,]" Spencer, 422 Md. at 428, 30 A.3d at 895, which has been described as the use of "violence or putting in fear." West, 312 Md. at 202, 539 A.2d at 233. Although the use of force element of robbery has been described as the use of violence or putting in fear, this description in no way encompasses the elements of second-degree assault of the intent-to-frighten type. An examination of the robbery statute, case law, and the relevant Maryland Criminal Pattern Jury Instructions demonstrates that the circuit court correctly instructed the jury as to the elements of the two offenses.

Having confirmed that the circuit court correctly instructed the jury regarding the two offenses' elements, I would next answer the question of whether second-degree assault of the intent-to-frighten type (of which the jury found Stewart not guilty) is a lesser-included offense of robbery (of which the jury found Stewart guilty) to determine whether the jury's verdicts were legally inconsistent.

I would answer that question in the negative, as not "all of the elements of" the offense of second-degree assault of the intent-to-frighten type "are included in" the offense of robbery. Abeokuto, 391 Md. at 353, 893 A.2d at 1055 (citation omitted). Indeed, as explained above, second-degree assault of the intent-to-frighten type includes elements that robbery lacks. To secure a conviction for second-degree assault of the intent-to-frighten type, the State must prove that: "(1) the defendant commit[ted] an act with the intent to place a victim in fear of immediate physical harm; (2) the defendant ha[d] the apparent

- 24 -

ability, at the time, to bring about the physical harm[,]" <u>Jones</u>, 440 Md. at 455, 103 A.3d at 589 (cleaned up); and (3) the victim was "in reasonable apprehension of" the physical harm, <u>Cruz</u>, 407 Md. at 209 n.3, 963 A.2d at 1188 n.3 (cleaned up). By contrast, to secure a conviction for robbery, the State need not prove that the victim reasonably feared immediate physical harm, that the defendant intended to create such fear, or that the defendant was apparently able to bring about the physical harm to the victim. To be sure, the State must prove that the defendant used either force or a threat of force against the victim, and those elements have been discussed as violence or putting in fear. That said, the threat of force or putting in fear has not been defined in our case law as needing to create reasonable fear of immediate physical harm, the defendant needing to intend to create such fear, or the defendant needing to have an apparent ability to physically harm the victim. For example, a defendant's oral threat of force that puts another in fear would be sufficient to satisfy the "threat of force" element of robbery without proof that the victim reasonably feared immediate physical harm, that the defendant intended to create that fear, or that the defendant had an apparent ability to physically harm the victim. In other words, the putting in fear associated by case law with robbery is not the equivalent of the elements of second-degree assault of the intent-to-frighten type.

An analysis of the circumstances of this case reveals that Stewart's conduct satisfied the elements of robbery, but not those of second-degree assault of the intent-to-frighten type. Rampmeyer, the victim, testified that Stewart told him that, if he did not "make any sudden moves" and "follow[ed] [Stewart's] instructions[, he] would not be shot and killed." Rampmeyer acknowledged that he did not see a gun, any other kind of weapon,

or a bulge in Stewart's clothing. Instead, Rampmeyer testified that Stewart's left hand was close to his waistband when he threatened Rampmeyer. Although Rampmeyer's testimony established that Stewart used a "threat of force," Spencer, 422 Md. at 428, 30 A.3d at 895 (citation omitted), and that Rampmeyer may have, indeed, been put in fear, the facts of the case do not establish the elements of second-degree assault of the intent-to-frighten variety.

I note that there are other cases in which, in contrast to Stewart, defendants were apparently able to physically harm victims. For example, in Montgomery v. State, 206 Md. App. 357, 392, 394, 47 A.3d 1140, 1161, 1162, cert. denied, 429 Md. 83, 54 A.3d 761 (2012), the Court of Special Appeals held that the evidence was sufficient to support a defendant's conviction for second-degree assault of the intent-to-frighten type where the defendant was part of a group of three people, who thus "outnumber[ed]" the victim and her nearest coworker, and who could have "cause[d the victim] an immediate battery with their bare hands." And, in Thompson v. State, 229 Md. App. 385, 414, 145 A.3d 105, 121 (2016), the Court of Special Appeals held that the evidence was sufficient to support a defendant's conviction for second-degree assault of the intent-to-frighten type where the defendant pointed a gun at the victim; the Court of Special Appeals noted that it was immaterial whether the gun "was loaded or operable[.]"

In this case, Stewart said that, if Rampmeyer did not make any sudden moves, then he would not be shot and killed; i.e., Stewart orally threatened Rampmeyer without displaying a weapon. Unlike the defendants in Montgomery and Thompson, Stewart did not point a weapon and did not act with a group that was capable of overpowering Rampmeyer. Where, as here, a defendant orally threatens a victim, that act, without more,

is not automatically second-degree assault of the intent-to-frighten type, one element of which is that the defendant "has the apparent ability . . . to bring about the physical harm" to the victim. Jones, 440 Md. at 455, 103 A.3d at 589 (cleaned up).

I am unpersuaded by Stewart's reliance on cases in which this Court and the Court of Special Appeals have stated that assault is a lesser-included offense of robbery. When this Court and the Court of Special Appeals have stated as much, they have been referring to assault of the battery type, not assault of the intent-to-frighten type. For example, in Gerald v. State, 299 Md. 138, 140, 472 A.2d 977, 978-79 (1984), this Court stated: "[A]ll the elements of simple assault are present in the offense of robbery. . . . Simple assault is a lesser[-]included offense of [] robbery[.]" Typically, the term "simple assault" means either assault of the attempted-battery type or assault of the intent-to-frighten type. See Assault, Black's Law Dictionary (10th ed. 2014). In Gerald, id. at 139, 472 A.2d at 978, the State charged the defendant with "assault and battery"—i.e., assault of the battery type.[11] Accordingly, Gerald, 299 Md. at 140, 472 A.2d at 979, stands for the proposition that assault of the battery type "is a lesser[-]included offense of [] robbery[.]" This makes sense, given that "causing offensive physical contact with another person" constitutes assault of the battery type, Nicolas v. State, 426 Md. 385, 403, 44 A.3d 396, 407 (2012),

---

[11]In Gerald, 299 Md. at 139-40, 472 A.2d at 978, in reviewing the denial of the defendant's motion to correct illegal sentence, this Court stated that the defendant had been charged with "armed robbery, robbery, and assault and battery." The jury acquitted the defendant of armed robbery and robbery, but found him guilty "on the assault charge." Id. at 139, 472 A.2d at 978. In Gerald, id. at 140, 143, 472 A.2d at 978, 980, this Court did not state that the defendant was found not guilty of battery, but rather consistently referred to his conviction for "assault" or "simple assault."

and given that offensive physical contact can satisfy the "force" element of robbery, Spencer, 422 Md. at 428-29, 30 A.3d at 895 (citation omitted).

Similarly, in Snowden v. State, 321 Md. 612, 614, 583 A.2d 1056, 1057 (1991), a defendant was convicted of multiple crimes, including robbery with a dangerous and deadly weapon and assault and battery. In that case, the defendant and an accomplice went into a restaurant with the intent to steal; the defendant held two employees at gunpoint; one employee struggled for the gun and was shot and killed; and a third employee came upon the scene and was shot in the arm by the defendant. See id. at 614-15, 583 A.2d at 1057. The defendant was convicted of murder of the first employee, and did not contest the conviction. See id. at 615, 583 A.2d at 1058. On appeal, the defendant contended that his conviction for assault and battery of the employee who was shot in the arm should have merged with his conviction for robbery with a dangerous and deadly weapon. See id. at 615, 583 A.2d at 1058. The State "reason[ed] that an assault (a threat of force) can support a robbery conviction and that a battery (a harmful or offensive touching) is not necessary to effectuate a robbery." Id. at 615, 583 A.2d at 1058. According to the State, therefore, the separate convictions were proper. See id. at 615-16, 583 A.2d at 1058.

This Court stated that the question was "whether separate convictions for assault and battery and robbery with a dangerous and deadly weapon of one victim arising out of the events of one evening are proper, or whether the lesser offense of assault and battery merges into the greater robbery offense." Id. at 614, 583 A.2d at 1057. This Court stated that, under the circumstances, it was unclear "whether the robbery charged was based on battery as a lesser[-]included offense[,] or on assault as a lesser[-]included offense with the

battery considered separate." Id. at 619, 583 A.2d at 1059. We stated that we were "constrained to give the [defendant] the benefit of the doubt and merge his sentence for and conviction of assault and battery into those for the robbery charge." Id. at 619, 583 A.2d at 1060. In so holding, this Court did not conclude that assault of the intent-to-frighten variety was a lesser-included offense of robbery.

In Wallace v. State, 219 Md. App. 234, 239, 258, 100 A.3d 1173, 1176, 1187 (2014), where the victim was beaten and robbed, the Court of Special Appeals held that a guilty verdict as to robbery and a not-guilty verdict as to second-degree assault are legally inconsistent. Although the Court of Special Appeals did not expressly identify the type of second-degree assault of which the jury found the defendant not guilty, it is clear that it was second-degree assault of the battery type, given that the evidence established that the defendant hit the victim, and given that the trial court instructed the jury regarding second-degree assault of the battery type. See id. at 240-41, 257 n.19, 100 A.3d at 1176-77, 1186 n.19. And, in discussing the assault, the Court of Special Appeals described "the alleged assault [as] the force element of the robbery[.]" Id. at 253, 100 A.3d at 1184. Against this backdrop, the Court of Special Appeals observed: "Simple assault is a lesser[-]included offense of [] robbery[.]" Id. at 252 n.15, 100 A.3d at 1183 n.15 (quoting Gerald, 299 Md. at 140, 472 A.2d at 979). Thus, Wallace stands for the proposition that assault of the battery type—not assault of the intent-to-frighten type—is a lesser-included offense of robbery.

In addition to relying on Gerald and Wallace, Stewart draws this Court's attention

- 29 -

to <u>Rose v. State</u>, 37 Md. App. 388, 377 A.2d 588, <u>cert. denied</u>, 281 Md. 743 (1977)[12] for the proposition that second-degree assault of the intent-to-frighten type is a lesser-included offense of robbery. In <u>Rose</u>, 37 Md. App. at 394, 377 A.2d at 591-92, the Court of Special Appeals held that assault with the intent to rob is a lesser-included offense of robbery. The Court of Special Appeals opined: "All of the facts necessary to prove the assault with [the] intent to rob were essential ingredients in proving the robbery. In order to prove the robbery, however, it was necessary not only to prove that the [defendant] assaulted the [victims] with the intent to rob them but also that he took personal property from them." <u>Id.</u> at 394, 377 A.2d at 591-92. The Court of Special Appeals did not provide any reasoning that pertained to the elements of assault with the intent to rob, much less address the elements of the offense of assault of the intent-to-frighten type. <u>See id.</u> at 394, 389-90, 377 A.2d at 591-92, 589. Indeed, the Court of Special Appeals stated that it was necessary to prove that the defendant "assaulted" the victims, but did not provide any definition, analysis, or elements as to assault. <u>Id.</u> at 394, 377 A.2d at 592. Significantly, in <u>Rose</u>, <u>id.</u> at 389-90, 377 A.2d at 589, the only evidence that the defendant had a weapon was the defendant's statement to the victim: "I have a gun[,] and you know what I want." In other words, in <u>Rose</u>, the defendant merely orally threatened the victim, and there was no indication that the Court of Special Appeals determined that the defendant intended to place the victim in fear of immediate physical harm, that the defendant had the apparent ability to bring about the physical harm, or that the victim reasonably feared physical harm.

---

[12]In <u>Campbell v. State</u>, 65 Md. App. 498, 510-11, 501 A.2d 111, 117-18 (1985), the Court of Special Appeals overruled a holding in <u>Rose</u> that is not relevant here.

I am unpersuaded by Stewart's reliance on other cases in which the Court of Special Appeals has indicated that assault is an element of robbery, or that robbery is a combination of assault and theft. In In re Antonette H., 200 Md. App. 341, 355, 357, 27 A.3d 616, 624, 625 (2011), a case that did not involve robbery, in considering whether the destruction of a car's ignition was part of the defendant's conviction of car theft, the Court of Special Appeals stated:

> One cannot be guilty of burglary, for instance, if found to be not guilty of the breaking and of the entering that are indispensable parts of the burglary. One cannot be guilty of robbery if not guilty of the underlying assault that is a necessary part of the robbery. One cannot be guilty of felony-murder if acquitted of the underlying felony.

This is a far cry from a determination that the offenses of assault of the intent-to-frighten variety and robbery share the same elements. In Tilghman v. State, 117 Md. App. 542, 568, 701 A.2d 847, 860 (1997), cert. denied, 349 Md. 104, 707 A.2d 90 (1998), citing Snowden, 321 Md. at 618, 583 A.2d at 1059, the Court of Special Appeals observed: "[R]obbery . . . can be either a combination of a larceny and a battery[,] or a combination of a larceny and an assault, of the 'putting in fear' variety." As discussed above, Snowden, 321 Md. at 619, 583 A.2d at 1060, does not stand for the proposition that assault of the intent-to-frighten type is a lesser-included offense of robbery.

For the above reasons, I would conclude that second-degree assault of the intent-to-frighten type is not a lesser-included offense of robbery. Because the circuit court correctly instructed the jury regarding the two offenses' elements, and because second-degree assault of the intent-to-frighten type is not a lesser-included offense of robbery, the guilty verdict as to robbery and the not-guilty verdict as to second-degree assault of the intent-to-frighten

type are not legally inconsistent.

Circuit Court for Baltimore County
Case No. 03-K-16-004418
Argued: February 5, 2019

_____

STATE OF MARYLAND

v.

WILLIE B. STEWART

_____

Barbera, C.J.
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring and Dissenting Opinion by
Greene, J.

_____

Filed: June 25, 2019

The majority view of this Court is to affirm our pronouncement in *Price* and *McNeal* that legally inconsistent verdicts will not be tolerated in Maryland. *Price v. State*, 405 Md. 10, 949 A.2d 619 (2008); *McNeal v. State*, 426 Md. 455, 44 A.3d 982 (2012). In addition, a majority of the Court agrees that a two-step inquiry is required for determining whether a verdict is legally inconsistent. This process is outlined, accurately in my view, in Judge Watts's opinion in this case, having been first explicated in *Price* and *McNeal* and maintained by their progeny. *See Teixeria v. State*, 213 Md. App. 664, 679-80, 75 A.3d 371, 379-80 (2013); *see also Travis v. State*, 218 Md. App. 410, 457-59, 98 A.3d 281, 308-09 (2014). In sum, a reviewing court must first confirm that the trial judge correctly instructed the jury regarding the two crimes' elements. *State v. Stewart*, No. 19, 2018 Term, Slip Op. at 3. Then, the judge must ascertain whether a crime for which the defendant was found not guilty is a lesser included offense of the crime for which the jury found the defendant guilty. *Id.* If necessary, the court may consider case law regarding what constitutes a lesser included offense. *Id.*

My disagreement is with Judge Watts's application of the two-step inquiry to the verdicts in the present case. Judge Watts concludes that the verdicts are not legally inconsistent. *Id.* Furthermore, in her view, Respondent's conduct was not sufficient evidence of intent to frighten assault. *Id.* at 25. Thus, according to Judge Watts, Respondent committed a robbery, but he did not commit an assault of the intent to frighten variety. *Id.*

Judge Hotten, in her opinion, points out that assault of the intent to frighten variety is a lesser included offense of robbery. *State v. Stewart*, No. 19, 2018 Term, Slip Op. at 1-

2 (Hotten, J., Dissent). I support that conclusion. In addition, she states that Respondent's conduct satisfied the elements of intent to frighten assault. *Id.* at 8-9. I agree with that position as well. I write separately and respectfully, however, to express my view of the application of the two-step analysis to determine whether, in the present case, the jury rendered legally inconsistent verdicts.

In *Price* and *McNeal*, we declared that legally inconsistent verdicts are not permitted in criminal trials. *See Price*, 405 Md. at 29, 949 A.2d at 630 (2008) (concluding that "inconsistent verdicts shall no longer be allowed"); *see also McNeal*, 426 Md. at 458-59, 44 A.3d at 984 (2012) (holding that *Price* prohibits legally inconsistent verdicts, and adopting the view of the concurring opinion in *Price* that factually inconsistent verdicts are permitted in criminal trials). A verdict is legally inconsistent "when 'an acquittal on one charge is conclusive as to an element which is necessary to and inherent in a charge on which a conviction has occurred[.]'" *Price*, 405 Md. at 37, 949 A.2d at 635-36 (2008) (citation omitted); *see also McNeal*, 426 Md. at 458, 44 A.3d at 984 ("Verdicts where a defendant is convicted of one charge, but acquitted of another charge that is an essential element of the first charge, are inconsistent as a matter of law."). A legally inconsistent verdict requires direct contrariety with respect to the elements of a crime for which the defendant was found not guilty and a crime for which the defendant was found guilty. *See Price*, 405 Md. at 37, 949 A.2d at 635-36; *see also McNeal*, 426 Md. at 458, 44 A.3d at 984.

In *Price*, the concurring opinion looked to the analysis of the Supreme Court of Rhode Island, which stated that "if the essential elements of the count[s] of which the

2

defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent." 405 Md. at 37, 949 A.2d at 636 (quoting *State v. Arroyo*, 844 A.2d 163, 171 (R.I. 2004) (internal quotation omitted)). In addition, we looked to the following explanation from the Supreme Court of Illinois:

> Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist.

*Id*. at 37-38, 949 A.2d at 636 (quoting *People v. Frias*, 99 Ill. 2d 193, 198 (1983)).

After a timely objection to a jury's inconsistent verdicts of conviction and acquittal, "the trial court should instruct or re-instruct the jury on the need for consistency and the range of permissible verdicts." *Id*. at 41-42, 949 A.2d at 638. Then, the jurors should resume deliberations. *Id*. at 42, 949 A.2d at 638. "The jury is free to resolve the inconsistency either by returning [a] verdict in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding results." *Id*. The underlying purpose of the rule against legally inconsistent verdicts is to ensure that an individual is not convicted of a crime of which the jury has found that the defendant did not commit an essential element. *Teixeira*, 213 Md. App. at 680, 75 A.3d at 380 (quoting *People v. Muhammad*, 17 N.Y. 3d 532, 539 (2011)). "A person cannot be convicted of a crime if a jury has necessarily decided that one of the essential elements was not proven beyond a reasonable doubt." *Id*.

I emphasize that, when applying these principles, the inconsistency analysis requires that the court review the legal elements of each offense submitted to the jury, without

3

regard to the proof presented at trial. *See, e.g.*, *McNeal*, 426 Md. at 472-73, 44 A.3d at 992-93. We need only examine the essential elements of the charges and the law and determine whether an offense for which the defendant was found not guilty is a lesser included offense or a predicate crime to the greater offense for which the defendant was convicted. *See id.* "[A] reviewing court, distanced from a jury, is equipped to evaluate independently the legal elements of charged crimes and make a determination as to whether the verdicts are compatible with those elements." *Id.* at 473, 44. A.3d at 993.

Applying the essential elements analysis to the present case, (*see State v. Stewart*, No. 19, 2018 Term, Slip Op. at 11-12), I would conclude that the elements of assault of the intent to frighten variety are the gravamen of robbery. Put simply, robbery is a compound offense. *Snowden v. State*, 321 Md. 612, 618, 583 A.2d 1056, 1059 (1991). Robbery is "a larceny[/theft] from the person accomplished by either an assault (putting in fear) or a battery (violence) [or an attempted battery] . . . . [E]ither combination produces a robbery." *Id.* In other words, a Robbery can be accomplished "either [by] a combination of larceny and a battery or a combination of larceny and an assault of the 'putting in fear' variety." *Tilghman v. State*, 117 Md. App. 542, 568, 701 A.2d 847, 860 (1997). A reasonable interpretation of our case law indicates that any one of the three varieties of assault, in conjunction with a theft, can be a predicate offense to robbery as a matter of law.

Common law assault is:

> [A]n attempt by force to injure the person of another . . . . The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another, that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict

a battery and an apparent ability to carry out such intention . . . . It is not necessary that there should be a specific purpose to do a particular injury.

*See Lamb v. State*, 93 Md. App. 422, 428 (1992) (citations omitted); *see also* Md. Code, Criminal Law, § 3-203(a), (b) ("A person may not commit an assault[,]" and violation of section 3-203 constitutes second degree assault); Md. Code, Criminal Law, § 3-201(b) ("'Assault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings."). Here, there was no allegation that Respondent committed what was described at common law as a battery or an attempt to commit a battery. As such, to convict Respondent of assault, the State was required to prove the elements of assault of the intent to frighten variety: (1) Respondent committed an act with the intent to place the victim in fear of immediate harm; (2) Respondent had the apparent ability at the time to bring about physical harm; (3) the victim reasonably feared immediate physical harm; and (4) Respondent's actions were not legally justified. *See Jones v. State*, 440 Md. 450, 455, 103 A.3d 586, 589 (2014).

The essential elements of the crime of robbery are the "felonious taking and carrying away of the personal property of another, from his [or her] person or in his [or her] presence, by violence or putting in fear." *Conyers v. State*, 345 Md. 525, 558, 693 A.2d 781, 796 (1997) (citation omitted). Robbery's element of "force or threat of force" is what distinguishes it from theft. *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 395 (2003). The "force or threat of force" element may be satisfied by actual violence or constructive force. *Id.* at 130-31, 821 A.2d at 399 (2003); *see also West v. State*, 312 Md. 197, 204-07, 539 A.2d 231, 234-35 (1988) (explaining that for robbery, force, actual or constructive,

5

must be sufficient to compel the victim to part with his or her property). Constructive force, or intent to put the victim in fear, is also referred to as intimidation. *See Coles*, 374 Md. at 123, 821 A.2d at 395; *see also Brooks v. State*, 314 Md. 585, 597, 552 A.2d 872, 879 (1989).

In my view, the elements of assault of the intent to frighten variety are subsumed by the element of "threat of force" or intimidation, which is an essential element of robbery. *See Coles*, 374 Md. at 125-26, 821 A.2d at 396. The intimidation element of robbery, not unlike assault of the intent to frighten variety, is guided by an objective standard. *Id.* at 127-28, 821 A.2d at 397-98. Both require the defendant to engage in an action or conduct with the apparent ability to bring about physical harm, and the victim to reasonably fear physical harm. Thus, the essential elements of both crimes require an act or conduct and intent or *mens re*a on the part of the defendant that reasonably tends to create apprehension in another person (the victim) that he or she will be physically harmed. As a result, the crime of assault of the intent to frighten variety does not "contain[] legal elements that are distinct from the elements" of robbery. *See McNeal*, 426 Md. at 472, 44 A.3d at 992 (holding that verdicts were not legally inconsistent because the charges at issue contained distinct legal elements). Assault of the intent to frighten variety is the predicate offense to robbery.

This Court's definition of intimidation or constructive force, an element of robbery, also makes clear it incorporates all of the elements of assault of the intent to frighten variety. *See Coles*, 374 Md. at 125-26, 821 A.2d at 396-97 (2003). In *Coles*, this Court concluded that there was sufficient evidence for the finder of fact to determine that the

"constructive violence" element of robbery was satisfied. *Id*. at 130, 821 A.2d at 399. To reach our conclusion that the prosecution in *Coles* met the burden of proof as to robbery, we defined the "intimidation or putting in fear" element of robbery with reference to the definition of assault. *Id*. at 126, 821 A.2d at 396. We explained:

> [W]hen intimidation or putting in fear is the gravamen of the action, the following test is to be applied in determining the sufficiency of the evidence:
>
> Any attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention.

*Id*. (quoting *Dixon v. State*, 302 Md. 447, 458-59, 488 A.2d 962, 967 (1985) (internal quotation marks omitted).

Indeed, that the "intimidation" element of robbery embodies all of the elements of the crime of assault of the intent to frighten variety was also recognized by this Court in *State v. Spencer*. 422 Md. 422, 434, 30 A.3d 891, 898 (2011). There, we applied the definition of intimidation from *Coles* and concluded that the defendant's statement to the victim, "Don't say nothing," was insufficient to find the defendant guilty of second degree assault. *Id.* at 434-35, 30 A.3d at 898-99. In *Spencer*, the State had "failed to prove an essential element of the robbery charge." *Id*. at 425, 30 A.3d at 893. This Court ordered the reversal of the defendant's convictions for *robbery and assault*. *Id*. at 437, 30 A.3d at 900.

The Court of Special Appeals relied on the same definition of intimidation in *Montgomery v. State*, 206 Md. App. 357, 386-88, 47 A.3d 1140, 1157-58 (2012), but the

7

case ended with different results. In *Montgomery*, the defendant entered the victim's workplace and demanded that she stand in a certain spot with her hands above the counter, then ordered her to ring up a transaction. *Id*. at 364-66, 47 A.3d at 1144-46. The court determined that there was sufficient evidence of robbery and assault of the intent to frighten variety. *Id*. at 394, 47 A.3d at 1161-62. Accordingly, the court affirmed the sentence that was imposed for robbery. *Id*. at 413, 47 A.3d at 1172. It is worth noting that the trial court, "[f]or sentencing purposes, [had merged] second-degree assault and theft . . . with robbery. *Id*. at 363 n. 6., 47 A.3d at 1144 n. 6. It is contrary to our jurisprudence to say that only an assault of the battery type, *i.e.* an offensive physical contact, "is a lesser included offense of robbery." *State v. Stewart*, No. 19, 2018 Term, Slip Op. at 27. Our caselaw recognizes that robbery is a compound offense, completed when a defendant commits a theft and an assault. *Snowden*, 321 Md. at 618, 583 A.2d at 1059 (1991). As such, the State must prove one form of assault and theft to convict a criminal defendant of robbery. Therefore, the inescapable conclusion is that assault – including assault of the intent to frighten variety – can be an element of, or a predicate to, the crime of robbery.

In the present case, the jury was required to find that Respondent committed theft using "violence or threat of violence" – *i.e.* an assault – to convict Respondent of robbery. Consistent with the jury instructions, Respondent was only alleged to have committed assault of the intent to frighten variety. Therefore, the jury was required to find that Respondent committed assault of the intent to frighten variety to convict him of robbery. Given that the jury returned a verdict of not guilty of second-degree assault but guilty of robbery, the jury found the legal elements of assault "both to exist and not to exist." *Price*,

8

204 Md. at 37-38, 949 A.2d at 636 (citation omitted). Having been found not guilty of second-degree assault, Respondent could not be convicted on the same evidence of the greater offense of robbery. The jury's not guilty verdict on the charge of second degree assault "is conclusive as to an element which is necessary to and inherent in" the charge of robbery, for which Respondent was convicted. *Id.* at 37, 949 A.2d at 635-36. Thus, in the present case, the verdicts of not guilty on the assault charge and guilty on the robbery charge are inconsistent as a matter of law. Accordingly, I would affirm the judgment of the Court of Special Appeals.

Circuit Court for Baltimore County
Case No. 03-K-16-004418
Argued: February 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term, 2018

_____

STATE OF MARYLAND

v.

WILLIE B. STEWART

_____

Barbera, C.J.,
Greene,
McDonald,
Watts,
Hotten,
Getty,
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Dissenting Opinion by Hotten, J.

_____

Filed: June 25, 2019

I agree with the two-step inquiry required for the determination of legally inconsistent verdicts, as provided in Judge Watts's opinion.[1]  I do not believe we should depart from tenets of *stare decisis* by reconsidering the approach to determining inconsistent verdicts, as the plurality contends.   I conclude that case law has established that second-degree assault, of either the battery or intent-to-frighten variety, is a lesser-included offense of robbery.  I also disagree with the assertion that the evidence at trial fell short of proof for intent-to-frighten assault based on a reading of our case law.[2]  Accordingly, I would affirm the judgment of the Court of Special Appeals.

## LESSER-INCLUDED OFFENSES

"Simple assault is a lesser[-]included offense of [ ] robbery[.]" *Gerald v. State*, 299 Md. 138, 140, 472 A.2d 977, 979 (1984) (*superseded by statute*); *see also Wallace v. State*, 219 Md. App. 234, 252, 100 A.3d 1173, 1183 n. 15 (2014) (quoting *Gerald*, *supra*).   I disagree with the premise that "simple assault" specifically refers to assault of the battery type in the second degree ("battery-assault"), as opposed to intent-to-frighten assault,

---

[1] "[T]o determine whether a guilty verdict and a not-guilty verdict are legally inconsistent, a court must first confirm that the trial court correctly instructed the jury regarding the two crimes' elements, then ascertain whether the crime of which the jury found the defendant not guilty is a lesser-included offense of the crime of which the jury found the defendant guilty.  In so ascertaining, the court may, if necessary, consider case law regarding what constitutes a lesser-included offense." *Slip Opinion* (Watts, J.) at 3.

[2] Note that the jury is the trier of fact and I do not assert that it is this Court's role to evaluate facts.  Rather, I contend that, pursuant to note 1, we may look to case law to determine that a verdict is legally inconsistent.  This is the analysis I have abided by to conclude that, not only is intent-to-frighten assault a lessor-included offense of battery, but the elements of intent-to-frighten assault were met in the instant matter.

which is at issue in the instant matter. *Slip Opinion* (Watts, J.) at 27-29. By working off of the premise that battery-assault is a lessor-included offense of robbery, we can conclude that battery-assault has all the elements of robbery, "so that only [robbery] contains [ ] distinct element[s]," *Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991) (explaining the required evidence test, which courts use to determine whether one offense merges into another), and "[l]ike a little fish being eaten by a bigger fish . . .[battery-assault] is swallowed by robbery[.]" *Gerald*, 299 Md. at 140-41, 472 A.2d at 979. In other words, all of the elements of battery-assault are subsumed by the elements of robbery, with the exception of the taking of property from the victim. The Maryland Criminal Pattern Jury Instructions ("MPJI-Cr") 4:01A, 4.01C, and 4:28A (2012 ed.) provides the following definitions for the relevant offenses[3]:

## INTENT-TO-FRIGHTEN ASSAULT
\*\*\*

---

[3] According to the Maryland Code, Criminal Law Article, § 3-201(b), "assault" means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings. Criminal Law Article § 3-401 specifies that:

(e) "Robbery" retains its judicially determined meaning except that:
(1) robbery includes obtaining the service of another by force or threat of force; and
(2) robbery requires proof of intent to withhold property of another:
(i) permanently;
(ii) for a period that results in the appropriation of a part of the property's value;
(iii) with the purpose to restore it only on payment of a reward or other compensation; or
(iv) to dispose of the property or use or deal with the property in a manner that makes it unlikely that the owner will recover it.

(1) [D]efendant committed an act with the intent to place [the victim] in fear of immediate [offensive physical contact] [physical harm];

(2) [D]efendant had the apparent ability, at that time, to bring about [offensive physical contact] [physical harm]; and

(3) [The victim] reasonably feared immediate [offensive physical contact] [physical harm]; [and]

[(4) [D]efendant's actions were not legally justified.]

## BATTERY-ASSAULT
***

(1) [D]efendant caused [offensive physical contact with] [physical harm to] [the victim];

(2) [T]he contact was the result of an intentional or reckless act of the defendant and was not accidental; and

(3) [T]he contact was [not consented to by [the victim]] [not legally justified].

## ROBBERY
***

(1) [D]efendant took the property from [[the victim's] presence and control];

(2) [D]efendant took the property by force or threat of force; and

(3) [D]efendant intended to deprive [the victim] of the property.
***

The contention that battery-assault is a lesser-included offense of robbery translates into the following: offensive, intentional, and unconsented physical contact (elements of battery-assault) are "swallowed" by, or are essentially synonymous with, robbery's element of "force or threat of force" that intends to deprive victims of property. In essence, Judge Watts's opinion differentiates between (i) physical, intentional, and offensive contact (elements of battery-assault) and (ii) acts intending to place a victim in fear of immediate physical harm  (elements of intent-to-frighten assault) in order to conclude that the former elements are "swallowed by" robbery, while the latter elements are distinct from

3

robbery. By making this distinction, Judge Watts's opinion concludes that the case law holding that assault is a lesser-included offense of robbery largely dealt with battery-assault, and that, while battery-assault is a lesser-included offense of robbery, intent-to-frighten assault is not a lesser-included offense. However, this is not what our case law reveals, because we have not explicitly created such a discrepancy between the forms of second-degree assault for the purposes of merger. If anything, our case law demonstrates that "threat of force" can sufficiently serve as "an act with the intent to place [the victim] in fear of immediate physical harm", such that intent-to-frighten assault has elements that are subsumed by, and merged into, robbery. *See infra*.

## CASE LAW

Judge Watts's opinion thoroughly considers a body of case law. Of note is the explanation of *Montgomery v. State*, 206 Md. App. 357, 47 A.3d 1140 (2012). *Slip opinion* (Watts, J.) at 26. In *Montgomery*, "the Court of Special Appeals held that the evidence was sufficient to support a defendant's conviction for second-degree assault of the **intent-to-frighten type** [and robbery]". *Id.* (emphasis added). Therefore, "[f]or sentencing purposes[,] **[the] [intent-to-frighten]assault and theft merged with robbery**." *Montgomery*, 206 Md. App. at 363, 47 A.3d at 1144 n.6 (emphasis added). Instead of disputing the *Montgomery* Court's holding that intent-to-frighten assault merges into robbery as a lesser-included offense, Judge Watts asserts that Respondent's actions in the case at bar did not even reach the threshold of intent-to-frighten assault. I do not find this persuasive, particularly given the *Montgomery* Court's explanation for a finding of intent-to-frighten assault: "Assault of the intentional threatening variety is a fully consummated

4

crime once the victim is placed in reasonable apprehension of an imminent battery. All that is required in terms of perception is an apparent present ability from the viewpoint of the threatened victim." 206 Md. App. at 389, 47 A.3d at 1159 (quoting *Hill v. State*, 134 Md. App. 327, 356, 759 A.2d 1164, 1179 (2000)). In the case at bar, the victim reasonably feared immediate physical harm from Respondent's cumulative actions, which extended beyond verbal threats.

The victim in the instant matter testified that Respondent "told me if I follow[ed] his instructions I would not be shot and killed. . . . He then told me to empty all of the money out my register and move slowly and I would not be harmed." The victim was afraid that Respondent was armed, but he never saw Respondent with a weapon. Despite never seeing a weapon, the victim testified that "[Respondent's] hand was down by his waist side when he made the comments to me. So with that being said, I immediately thought that he had a weapon and I had no idea what he was going to do." On cross-examination, the victim clarified that "[w]ith [Respondent's] hand continued [*sic*] to be on his waist line, left hand, and not really leaving, that made me believe that there was a weapon of some sort that could have been involved." Video surveillance from the store, which captured the incident, revealed that Respondent leaned over towards the victim during the robbery. When questioned about Respondent's leaning gesture during the robbery, the victim stated that he "put [his] hands up because . . . [he] had no idea what was going on." Cumulatively, Respondent's conduct, including his verbal threat, hand position, and body movement, placed the victim in reasonable fear of immediate physical harm. As such, I do not find a distinction between the instant  case and *Montgomery*. In both cases, the victims

5

experienced intent-to frighten assault and a robbery.  As such, I  see no reason to depart

from the written assertion in *Montgomery* that "**[intent-to-frighten]assault and theft**

**merge[ ] with robbery**."  206 Md. App. at 363, 47 A.3d at 1144 n.6 (emphasis added).[4]

To the extent that distinctions are made between "force or threat of force" (also

described as "intimidation"[5]) and **"an act** with the intent to place [the victim] in fear of

immediate physical harm" ("act"), the following analysis of *Coles v. State*, 374 Md. 114,

821 A.2d 389 (2003), reveals that the act requirement in intent-to-frighten assault can be

synonymous with the force or threat of force requirement in robbery.

In *Coles*, this Court held that there was sufficient evidence of intimidation or

constructive violence to sustain Coles's convictions of robbery and second-degree assault.[6]

374 Md. at 116, 130, 821 A.2d at 391, 399.  Our holding in *Coles* reveals that the

---

[4]  Judge Watts's opinion also cites *Thompson v. State*, 229 Md. App. 385, 145 A.3d 105 (2016), to support the contention that Respondent's conduct did not meet the threshold of intent-to-frighten assault. *Slip opinion* (Watts, J.) at 26-27.  I maintain that Respondent's cumulative conduct satisfied the elements of intent-to-frighten assault. Not only did Respondent verbally threaten the victim, but the surrounding circumstances of the robbery, including Respondent's permanent hand position and movement towards the victim, made it such that the victim reasonably feared immediate physical harm.

[5] "The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation." *Coles v. State*, 374 Md. 114, 123, 821 A.2d 389, 395 (2003) (citing *Spitzinger v. State,* 340 Md. 114, 121, 665 A.2d 685, 688 (1995)).

[6] Though the *Coles* Court uses the term "second-degree assault" without specifying intent-to-frighten assault, the discussion of intimidation throughout the opinion makes it clear that the Court was alluding to intent-to-frighten assault.  To maintain consistency with the *Coles* Opinion, I will refer to the assault as "second-degree assault."

defendant's threat of force, necessary to sustain his convictions for robbery, was sufficient to constitute an "act" for second-degree assault.[7]

> Coles committed three separate robberies.
>
> During the first robbery, Coles, entered [a] bank wearing a baseball hat, a scarf around his neck, and a jacket or heavy shirt in which he could have concealed a weapon.  He walked up to [the victim, who was a bank teller] and gave her a bag and a note telling her to "[p]ut some money in the bag," and ordering her "not to hit an alarm ... not to let anybody know," and to return the note.  That note constituted an unequivocal demand for money and an intimidating command not to let anyone know that Coles was stealing the money.  The threat did not end, however, with the note.  Upon discovering that [the victim] had not put the note in the bag, Coles "looked at" her and warned her that she "better find it."
>
> ***
>
> During the third robbery, Coles, wearing a jacket in which he could have easily concealed a weapon, entered the bank, walked up to teller Bernice Swann's counter, and handed her a bag and a note that read, "Put all the money in the bag no alarms thank you." . . .

---

[7] Note that there were three issues for review, but the *Coles* Court only addressed the first.  The issues presented were as follows:

> [1.]  Whether the evidence in the instant case was sufficient to support Coles's convictions for three counts of robbery.
>
> [2.]  Whether the evidence was sufficient to support Cole's convictions for three counts of second[-]degree assault.
>
> [3.]  Whether the Circuit Court failed to pronounce a specific verdict on the counts of second degree assault, misdemeanor theft, and felony theft, and if so, whether that failure required an acquittal on those counts.

374 Md. at 121, 821 A.2d at 393.  In *Coles*, we held "that under the circumstances of th[e] case, the evidence was sufficient for a fact finder to conclude beyond a reasonable doubt that Coles was guilty of three counts of robbery.  In light of our holding, we need not, and do not, address Coles's second and third contentions."  374 Md. at 121, 821 A.2d at 393.  Given the finding of guilt for robbery, the *Coles* Court affirmed the circuit court's merger of the lesser-included offenses of (intent-to-frighten) second-degree assault and theft.  *Id.* at 120, 821 A.2d at 392.

Coles also was wearing a jacket at the time, in which he could have easily concealed a weapon. As we observed in *Dixon,* the presence of an undisclosed weapon may be inferred from the circumstances, *Dixon [v. State,* 302 Md. 447, 463, 488 A.2d 962, 970 (1985)], and the presence of a deadly weapon may satisfy the constructive violence element of robbery. *Bowman v. State*, [314 Md. 725, 730, 552 A.2d 1303, 1305 (1989)]. Thus, we hold that the evidence of Coles's conduct was sufficient for a rational fact finder to conclude that the constructive violence aspect of robbery was satisfied in the instant case.

374 Md. at 129-30, 821 A.2d at 398-99. The Court affirmed Coles's three robbery convictions, determining that his verbal threats, general conduct, and the possibility of a hidden weapon, were sufficient for a finding of "force or threat of force." The Court did not explicitly discuss Coles's second issue as to whether there was sufficient evidence to sustain his second-degree assault convictions, each of which were associated with the robberies. However, the Court held that, in light of upholding Coles's robbery convictions, it did not need to address the second-degree assault convictions. By affirming Coles's second-degree assault convictions in light of the robbery convictions, this Court implied that "force or threat of force" is sufficient to satisfy the "act" requirement of second-degree assault.

Our precedent in *Coles* reveals that Respondent's conduct in the case at bar constituted not only "threat or threat of force", **but also represented an "act."**[8] As such,

_____

[8] *Coles* also bolsters the conclusion that Respondent's conduct in the instant case sufficiently constituted intent-to-frighten assault. Just as Coles's verbal threats, general conduct, and the possibility of a hidden weapon were sufficient for a finding of "force or threat of force," Respondent's verbal threat, leaning gesture towards the victim, and hand placement suggesting a hidden weapon, were sufficient for a finding of "force or threat of

8

any distinction between the "act" element in intent-to-frighten assault and "the threat of force" distinction in robbery is meritless. The "act" element merges with robbery's threat of force element.

To maintain the premise that battery-assault is a lesser-included offense of robbery, while intent-to-frighten assault is not, Judge Watts's opinion provides that the Court's discussion in *Wallace v. State*, 219 Md. App. 234, 100 A.3d 1173, 1176 (2014), specifically contemplated battery-assault. *Slip opinion* (Watts, J.) at 29. Because the battery-assault acted "[as] the force element of robbery", *id.*, the assault was a lesser-included offense of the robbery. However, our analysis in *Coles* revealed that the "act" requirement of intent-to-frighten assault can also interchangeably serve as a "threat of force." *See supra*. As such, the ultimate conclusion in *Wallace*—that "[s]imple assault is a lesser [-] included offense of [ ] robbery—applies to *both* forms of second-degree assault.

For these reasons, I would affirm the judgment of the Court of Special Appeals.

---

force"—which as I illustrate, is synonymous with the "act" requirement of intent-to-frighten assault.